IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

### AT NOVEMBER TERM, 1871.

---

### GEORGE HUNT v. ALEXANDER GRAY, JR.

1. Where an alteration is apparent on a note or other written instrument, the question whether such alteration was made before or after execution must be submitted to the jury.
2. Any alteration of an instrument by the party claiming an interest under it, avoids such instrument.
3. If an agent entrusted with a note for the purpose of having it discounted in bank, alter it, such alteration will not avoid such note, such act not being imputable to the principal.
4. If an instrument be altered by the party holding, by mistake, or without any fraudulent intent, such alteration will not impair the right of suit founded on the consideration for which such instrument was given.

---

Rule to show cause why a new trial should not be granted.

The material facts were these. The suit was upon a note of which the defendant was the drawer, one John E. Hunt being the drawee. The consideration of the note was a horse sold and delivered. This horse, it appeared, was the property of George Hunt, the plaintiff, for whom the said John E. Hunt

227

was acting as agent in the sale of the horse. This agency was not disclosed to the defendant. Upon the receipt of the note the agent showed it to the plaintiff, and took it to the bank to have it discounted for his use. The bank refused to cash the note, as it was drawn payable without "defalcation," merely. The agent, without the knowledge of the plaintiff, thereupon inserted into the note the words "or discount." The bank then took the note, and the proceeds passed to the plaintiff. The note not being paid at maturity, the plaintiff took it up and brought this action.

The cause was tried before Justice SCUDDER, at the Monmouth Circuit, and the verdict was for plaintiff.

For the rule to show cause, *Thomas G. Lytle.*

Contra, *C. Haight* and *Joel Parker.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. There was a material interlineation apparent on the face of the note in suit in this cause, and the first question which arose at the trial was, whether the plaintiff was bound to explain such circumstance before resting his case.

Professor Parsons, in his Treatise on Contracts, Vol. II., p. 228, says: "That, in the absence of explanation, evident alteration of any instrument is generally presumed to have been made after the execution of it, and consequently it must be explained by the party who relies on the instrument, or seeks to take advantage of it." This doctrine is assuredly sustained by many authorities, but the learned author, just referred to, admits that the opposite view has an equal sanction in judicial opinion. In England there are several cases to the effect that if a bill or note exhibit the appearance of alteration, the holder must account for it. But these decisions are all of a recent date, and appear to be based as much on reasons derived from the policy of the stamp acts as from

considerations resting in the general principles of the law. On the other hand, a large number of the authorities in this country adopt the rule that where an alteration exhibits itself on the face of an instrument, it must be submitted to the jury with the attendant circumstances, and that there can be no judicial presumption, founded on inspection, that the change was made after the execution of the paper, whether under seal or otherwise. The cases on both sides of this question are collected, with much fullness, in the notes to the last edition of *Smith's Lead. Cas., Vol. I., Part* 2, *p.* 1168.

But whatever the rule of law in this respect may be elsewhere, the practice in this state has always been to refer, under ordinary circumstances, the question as to the time of the alteration of a written instrument, to the consideration of the jury. The mere fact that the writing presents symptoms or evidence that a change has been made in the language employed, does not of itself create a legal intendment that such alteration was effected subsequently to the perfection of the contract. So far as I am aware, the usual course of proceeding has been to take the opinion of the jury upon the point. *Den* v. *Wright,* 2 *Halst.* 175, has been the leading case as to this particular, and sanctions, and has possibly established, this procedure. That trial was before Chief Justice Kirkpatrick, and on a motion to overrule a deed on account of two alleged erasures and alterations, which had not been accounted for, the rule was directly put in force, that it is the province of the jury to decide whether an alteration be made before or after the sealing of the instrument. This ruling was afterwards sustained in banc. In the antecedent case of the *Cumberland Bank* v. *Hall,* 1 *Halst.* 215, this court appears to have acted on the same view of the law. It was an action on a promissory note which, to all appearance, had been altered, and the court instructed the jury that the law presumed, in the absence of explanatory evidence, the alteration to have been made after its execution. This court granted a new trial, the objection to this instruction appearing to be the principal ground of action; but as there was no

opinion read, and there was another alleged misdirection at the circuit, this case is not so clear an authority on the point as the one previously cited. The case of *Sayre* v. *Reynolds & Camp*, 2 *South.* 737, is in this same line, being a suit on a note bearing signs of having been tampered with, and the rule was applied that it had been properly admitted, the question of its alleged corruption being an after consideration. In *Administrators of White* v. *Williams*, 2 *Green's C. R.* 385, it is said that where there is no memorandum or note made of the alteration, the time when it is made is a question of fact; and in *Den* v. *Farlee*, 1 *Zab.* 284, the same practice is asserted and put in force. To the same effect is the decision in the *North River Meadow Company* v. *Shrewsbury Church*, 2 *Zab.* 425. These cases, I think, abundantly show what the rule of law in the respect in question is, and for a long time has been in this state. The note now in controversy was admissible in evidence, notwithstanding the manifest interlineation apparent upon its face.

But before the evidence in this case was concluded, it was shown that the alteration referred to was actually made after the note was executed by the defendant, and without his knowledge, and the decision of the present motion, therefore, depends on the solution of other questions than the one just considered.

The alteration was a material one, and it is alleged that it was made by the agent of the plaintiff. The question then is presented as to the effect of such an alteration of a written contract. I have no doubt any legal instrument is, as a means of evidence, annulled by such an act. This was the doctrine, as extracted from the Year Books, expounded in *Pigot's case*, 11 *Rep.* 27. The law, as resolved in this celebrated decision, was, that when any deed is altered in a point material, by the plaintiff himself, or by any stranger, without the privity of the obligee, be it by interlineation, addition, raising, or by drawing a pen through a line, or through the midst of any material word, that the deed thereby becomes void. And in the recent case of *Davidson* v. *Cooper*, 11 *M. &*

*W.* 778; 13 *Ib.* 343, Lord Abinger, in delivering the judgment of the Court of Exchequer, said: " There is no doubt but that, in the case of a deed, any material alteration, whether made by the party holding it or by a stranger, renders the instrument altogether void from the time when such alteration is made." In *Master* v. *Miller*, 4 *T. R.* 320, this principle was adjudged to be applicable to promissory notes, and upon grounds of public policy, which would extend so as to embrace all written contracts. To the extent that a legal instrument will be avoided by an alteration made, either directly or indirectly, by the party claiming an interest under it, this doctrine has been repeatedly recognized by this court, and, as a principle of our legal system, is not to be questioned. *Price's Adm'r* v. *Tallman's Adm'r*, *Coxe* 447 ; *Den* v. *Wright*, 2 *Halst.* 175; *Bell* v. *Quick et al.*, 1 *Green* 312.

The reasons for this rule are obvious and of the most solid character. In its absence the inducement to fraud would be very strong, and public policy requires that, in the language of Lord Kenyon, " no man shall be permitted to take the chance of committing a fraud without running any risk of losing by the event when it is detected." Even immaterial alterations are fatal, as the rule, to be efficacious, cannot permit a person to tamper, in any degree, with the written contract of another in his possession. If the instrument has been altered by the mistake of the party holding it, relief must be sought in a court of equity. Within this limit I do not find that the legal principle has been seriously called in question.

It was, indeed, insisted upon at the argument, that the alteration of this note was in furtherance of the original agreement, and that, therefore, it was unobjectionable. The rule claimed was, that a party holding a written contract could legally alter it so as to make it conform to the real understanding between the contracting parties. This was certainly, in this case, good ground for believing that both of these parties understood that the note to be given for the price of the horse sold, should be one of complete negotiability, and

the probability is that the instrument, in its changed form, did, in point of fact, effectuate the real intention. But still such act, on the plainest grounds, was manifestly illegal. The cases cited do not justify it. They are all cases depending on the policy of the English stamp acts. To maintain that a party may reform a written instrument by his own act, is, in reality, to convert all contracts into oral contracts; the written instrument would no longer be the depositary of the intention of the parties, but either party could make it accord with the remembrance of the by-standers. This would be to allow the party to do what the court cannot do at the trial—that is, to resort to evidence *aliunde* to ascertain what was meant. If the writing does not hit the real design of the parties to it, the error must be corrected in a court of equity. The application of these familiar principles at once refutes the proposition that the agent of the plaintiff could lawfully alter this note for the purpose specified. The law prohibits a party from altering a written contract, *ex mero motu*, whatever his design may be, whether good or bad. The alteration of the note, in this case, destroyed it, if such alteration, in legal intendment, is to be ascribed to the plaintiff.

But here, I think, intervenes one of the infirmities of the defence. The alteration of this note was not the act of the plaintiff, because the person who made it was not his agent for that purpose. These were the facts: John T. Hunt was the agent who sold the plaintiff's horse for him; in that transaction he took the note in dispute and carried it to the plaintiff; he then took it to the bank and had it discounted, the proceeds going to the plaintiff. From these circumstances an authority to alter this note cannot be inferred. It was not an act that properly appertained to the transaction to which the agency related. It could not have been within the contemplation of either the principal or the agent, at the time of the creation of the agency. Consequently, the act must be regarded as though done by a stranger, without the concurrence, express or implied, of the plaintiff. The ques-

Hunt v. Gray.

tion is, will an alteration of a note by a stranger *vitiate* the note?

It will be observed that the rule, as stated by Lord Coke in the case cited from his reports, answers this inquiry in the affirmative, and that seems to be, after some fluctuation of sentiment, the present prevailing opinion in the English courts. But the doctrine rests, I think, rather on ancient dicta than on actual ancient decisions, and the American rule, and with much the better reason, appears to be entirely the other way. Professor Parsons treats the rule as completely settled in this country, that a material alteration, by a stranger, will not render the instrument void, if it can be shown, by evidence, what the language was as it originally stood. 2 *Parsons on Cont.* 223, note 9, where the cases on the subject will be found collected. As the common law, in its ancient form, cannot be said to have been so settled on this point as to be imperative on this court, we are at liberty to follow either the modern English or American rule, and I have already said that the latter seems to me preferable. The only ground which I have found suggested in support of the more stringent rule is this: that a paper cannot be altered by a stranger without laches on the part of the holder of it. But this is an assumption which has no foundation in fact. A man is not always remiss who trusts his papers with another; many of them, every one knows, must be constantly passing from hand to hand. Under such circumstances, the imputation of laches is utterly misplaced. Nor does there appear to be any necessity arising from considerations of public policy for the enforcement of so severe a rule. Strangers having no interest in an instrument, are under no great temptation to corrupt it, and it is, therefore, an evil which will not often occur, while the injustice of canceling a written contract without fault in the party holding it, is so flagrant that it should require the strongest reasons for the law to inflict it. Adopting, then, the rule recognized by the courts in this country, and applying it to this case, the result is, that this verdict founded on the note in question must stand, as the note was not altered by

the plaintiff, nor with his consent, and as the act of a stranger could not deprive it of its legal force.

But independently of this view, there is a second ground on which the proceedings below should be affirmed. It is clear, from the evidence, that the note was not altered with any fraudulent purpose, and this being the case the original cause of action will remain, even though the change in the note is to be imputed to the plaintiff. The consideration of the note was the sale of the horse, the property of the plaintiff, and if the note is to be regarded as destroyed, in law, by the act of the plaintiff, such act being devoid of fraud, such consideration will support the suit. The defendant in this case asks this court to decide that he may keep the plaintiff's horse without paying anything for him, because the agent of the plaintiff, under an erroneous idea of his rights, made the alteration in question, and which has not, in the least degree, affected the defendant. It is not often that a party can perpetrate a fraud by force of the generality of legal rules; the defendant, certainly, cannot in this case. In the case of *Servis* v. *Schenck et al.*, 3. *C. E. Green* 461, the legal principle is correctly stated by the Chancellor. There the alteration had been made without any fraudulent intent, but under a mistake of the facts. "In such case," said the court, "although the alteration avoids the note, yet it leaves the original debt unpaid." The same doctrine will be found stated in 2 *Parsons on B. & N.* 571, where the cases are also cited.

The judge at the circuit, therefore, very properly held that even if the note in this case was unavailable, the plaintiff was entitled to receive the agreed value of the horse on the common counts.

The remaining question discussed was as to the warranty. The horse, in the sale, it was insisted, was warranted to be sound. The imperfection proved was that the horse was a "cribber." Counsel on both sides seemed to concede that this was, if it existed, a breach of the warranty. There was no evidence on the subject, but in some of the English decisions it is held that this is a vice, and not an unsoundness.

It would appear that the learned on this subject are not entirely agreed. But without resting on this consideration, I find nothing in the evidence which leads to the conviction that the jury have fallen into error. I think the law has been enforced, justice of the case has been reached, and that, conse-quently, the verdict should be allowed to stand.

Rule discharged.

CITED *in Hoey* v. *Jarman,* 10 *Vr.* 524; *Force* v. *City of Elizabeth,* 1 *Stew.* 407.