In the matter of the estate of JOHN EDMUND NEWTON WHITE-
HEAD, deceased.

[Submitted May 17th, 1915. Determined June 3d, 1915.]

1. The ordinary has no jurisdiction to entertain proof of a will in solemn form as a means of setting aside a decree of probate of a surrogate who has acted within his original jurisdiction, and from whose decree the statutory period of review has expired.

2. Act of December 16th, 1784 (*Pat. L. p. 59*), creating an orphans court, transferred from the surrogates to the orphans court the powers theretofore exercised by the surrogate in hearing and determining disputes as to the validity of wills and as to rights of administration. It also provided an appeal to the ordinary from each of the two courts. Act of June 13th, 1820 (*Rev. 1821 p. 776*), provided that the surrogates should not proceed to prove a will until ten days from the death of testator, and that appeals from the surrogate to the prerogative court were required to be taken within six months. Act of March 17th, 1855 (*P. L. 1855 p. 342*), provided for an appeal from a surrogate's probate to the orphans court, prescribing as the limit for such appeal six months for residents and one year for non-residents. Act of March 27th, 1874 (*Rev. Stat. 1874 p. 791*), shortened the period for appeal from a surrogate's probate by one-half in each case.—*Held*, that, since such legislation affected procedure merely, it constituted no encroachment on the constitutional powers of the ordinary to determine the validity of wills by entertaining proofs thereof in solemn form.

3. Since no one has any rights to the personalty of a decedent, except such as are allowed by the state laws, whether such personalty shall pass under the will or under the statute of distributions being determinable by reference to the state laws alone, that determination is conclusive although made without such notice to parties in interest as would be necessary to bar ordinary property rights, the legislature has power to limit the period of appeal in matters of probate without regard to actual notice to parties in interest.

On petition for proof of will in solemn form.

*Mr. Louis H. Miller*, for the petitioner.

LEAMING, VICE-ORDINARY.

A petition has been filed in this court by Charlotta S. Vidal, as the daughter and sole heir-at-law of John Edmund Newton Whitehead, deceased, the ultimate purpose of which is to set

aside an order of probate and letters testamentary of the will of said Whitehead, which order and letters were heretofore made and issued by the surrogate of Cumberland county; to that end the petitioner prays that the executor to whom letters testamentary has been issued by the surrogate may be required to prove the will before the ordinary in solemn form. Application is now made in behalf of petitioner for an order directing the executor to show cause why the probate should not be set aside and the executor required to prove the will before the ordinary in solemn form and an administrator *pendente lite* appointed and the executor restrained from further administrative acts pending the proceedings.

I have been unable to reach the conclusion that the ordinary has jurisdiction to grant any part of the relief sought, and have accordingly declined to issue an order to show cause, either with or without restraint.

The petition, which is duly verified, sets forth that John Edmund Newton Whitehead died at his home in Cumberland county, April 3d, 1914, possessed of personal estate in that county and leaving a widow by his second marriage and petitioner as his only child and sole heir-at-law, and that on April 17th, 1914, the surrogate of that county, on petition of the widow, admitted to probate decedent's will and granted letters testamentary to the widow, who has been acting as administratrix since that date, and who, by her inventory thereafter filed, disclosed personal assets of testator to the amount of over $22,000. These proceedings of probate are set forth in full in the petition and are admittedly regular on their face. The petition further avers that while the affidavit made before the surrogate by the surviving subscribing witness to the will discloses that the will was executed in accordance with the requirements of the statute, in truth it was not so executed, and in verification of that averment there is annexed to the petition an affidavit since made by the same witness, at the instance of petitioner, which, if true, indicates that the will was not executed by testator in the presence of two witnesses present at the same time. The petition further avers that by the terms of the will decedent's entire estate is

given to his widow, and also that the will was the product of fraud and undue influence of the widow.

It is also set forth in the petition that the petitioner is a resident of the State of New York and did not hear of her father's death until after the period of appeal from the probate had expired.

Assuming, as for present purposes it may be assumed, that the matters set forth in the petition are true, it is obvious that relief should be extended to petitioner in this court if jurisdiction for that purpose can be found to exist; especially is this true in view of the circumstance that it has been held that the surrogate and orphans court are without jurisdiction to entertain a like petition (*Murray* v. *Lynch, 64 N. J. Eq. 290; affirmed, 65 N. J. Eq. 399*), and it has also been held that the court of chancery has no jurisdiction in matters of this nature. See *Trustees* v. *Wilkinson, 36 N. J. Eq. 141,* and cases there collected, to which may be added *Ellis* v. *Davis, 109 U. S. 485, 494,* and *1 Wms. Ex. 450 et seq.* Unless this court can entertain the present petition, it may well be doubted whether any remedy exists whereby a judicial inquiry can be made touching the validity of the will in question, except as to any real estate which may have been owned by decedent at the time of his death.

*In re the will of Hodnett, 65 N. J. Eq. 329,* it was determined that the ordinary has jurisdiction to require a will which has been proven before him as ordinary in common form, and by him admitted to probate, to be reproven before him in solemn form. It is there recognized that the jurisdiction of the English ecclesiastical courts in matters of probate and administration was conferred by royal commission upon Lord Cornbury as governor of the province of New Jersey in 1702, and was by like authority exercised by successive governors of the province and thereafter by the successive governors of the state, as ordinaries or surrogates general, under the constitution of 1776, and by the chancellor, as ordinary or surrogate general, under the constitution of 1844; that jurisdiction, so conferred and exercised, is there found to have included the power above stated and to remain unimpaired by any legislation. But it will be observed that the present petition invokes the exercise of a similar power upon the

part of the ordinary over an order of probate and grant of letters testamentary made by a surrogate, and the exercise of the power is sought after the statutory period of appeal from the action of the surrogate has expired.

It is pointed out—*In re Coursen's Will, 4 N. J. Eq. 408* (at *p. 414*)—that prior to the act of December 16th, 1784, which created an orphans court (*Pat. L. p. 59*), the jurisdiction exercised by the ordinary's surrogate not only included granting of probate of wills but also hearing and deciding disputes touching their validity and disputes touching rights of administration, and that the act of 1784 in creating the orphans court transferred from the surrogates to the orphans court the powers theretofore exercised by the surrogates in hearing and determining such disputes. After the passage of that act, in the absence of doubts arising on the face of a will, or dispute respecting the existence of a will, or a *caveat* against proving a will, the surrogate probated the will; when such doubts or disputes arose or *caveat* was filed, the surrogate was by that act forbidden to further proceed and was required to transfer the matter to the orphans court. These provisions of section 15 of that act have been preserved in all essential features to this time. By that act an appeal was given from the orphans court to the prerogative court if demanded within one month after the sentence or decree of the orphans court; an appeal was also given from proceedings of the surrogate to the prerogative court. By act of June 13th, 1820 (*Pen. 776*), it was provided that the surrogates should not proceed to prove a will until ten days from the death of the testator and appeals from the surrogate to the prerogative court were required to be taken within six months. By act of March 17th, 1855 (*P. L. 1855 p. 342*), an appeal from a surrogate's probate was required to be made to the orphans court, and six months for residents and one year for non-residents was prescribed as the limit of time for such appeals. By act of March 29th, 1874 (*Rev. p. 492*), the period for appeal from a surrogate's probate was shortened to three months for residents and six months for non-residents. The act of 1874 remains unchanged in that respect. While this legislation may be appropriately deemed to have in no way modified or curtailed

the ancient jurisdiction of the ordinary, in so far as that juris-
diction authorized him to entertain an application for original
probate or to set aside a probate which he had granted, yet it
cannot be overlooked that the legislation provided a specific
method for review by the ordinary of all cases over which either
the surrogates or orphans court had exercised original jurisdic-
tion, and specifically limited the period within which the right
of review should be exercised. It seems impossible to regard
such legislation as reserving to the ordinary the power to set
aside or review in any other manner a proceeding in which the
inferior tribunal should have acted within its complete original
jurisdiction, if indeed such power had at any time been exer-
cised by the ordinary in any manner other than by appeal. This
view is, I think, entertained by the learned ordinary in *Coursen's
Will, supra,* in which the following appears: "Notwithstanding
the complete original jurisdiction which the ordinary has in all
cases of probate and administration, his jurisdiction is concur-
rent with that of his surrogates. These officers have long been
recognized by the laws, and although they at first derived their
powers from the ordinary, as his deputies, those powers have
been confirmed to them by long usage and successive declaratory
acts of the legislature; and the ordinary cannot now resume
them at will, nor supersede their proceedings under and by
virtue of those powers. And it follows as a necessary conse-
quence, that whenever a surrogate has obtained cognizance of a
particular case, the ordinary cannot interfere *pendente lite.*
He may review the surrogate's proceedings by appeal, but in
no other way."

The courts of this state have given uniform recognition to the
view that the proceedings of the surrogate, in admitting a will
to probate, are those of a regularly established court in which the
surrogate exercises judicial functions, and that such proceedings
can only be reviewed by appeal. In *Quidort's Administrator* v
*Pergeaux, 18 N. J. Eq. 472, 477,* Chancellor Zabriskie says:
"The granting administration is exclusively with the ordinary
and his surrogates. The grant is a proceeding *in rem,* in the
strict sense of that term. It constitutes the person to whom it
is granted the administrator, whether rightfully or wrongfully

granted; and it cannot be inquired into here collaterally. The act of the surrogate can only be reviewed by appeal to the orphans court or prerogative court. Like the acts of all regularly constituted tribunals, the acts of the surrogate cannot be impeached collaterally." In *Ryno's Executor* v. *Ryno's Administrator, 27 N. J. Eq. 522, 524,* our court of errors and appeals quotes the views above expressed by Chancellor Zabriskie with approval. In a subsequent part of the opinion of the court in that case the following language is used: "If the probate of the will were irregular or voidable for any cause, the remedy of the husband was by appeal to the ordinary, or by proceedings for the revocation of the letters;" and *In re Evans, 29 N. J. Eq. 571, 575,* Chancellor Runyon, sitting as ordinary, quotes that language; but in neither case was the power of the ordinary to revoke a probate of the surrogate, except on appeal, in the slightest degree involved or specifically considered. Again, in *Steele* v. *Queen, 67 N. J. Law 99,* the surrogate is said to hold a court and act judicially in probating wills; and in *Murray* v. *Lynch, 64 N. J. Eq. 290, 302,* the surrogate is again declared to exercise judicial functions in probating wills; and the same view is made the basis of decision in *Crawford* v. *Lees, 84 N. J. Eq. 324.*

I have been unable to ascertain from such examination as I have been privileged to make of the works on practice in the English ecclesiastical courts whether a probate granted in common form by a deputy of an ordinary or metropolitan could be thereafter reviewed or set aside through the medium of proof in solemn form before the ordinary or metropolitan, nor have I been able to ascertain with certainty whether our provincial governors, under their probate authority bestowed by royal instructions, assumed in that manner to review or supersede probates allowed by their surrogates; but, as already noted, the act of 1784, establishing our orphans court, specifically provided an appeal to the prerogative court from proceedings of the surrogate, and this appeal from probates of the surrogate has uniformly included the investigation of the very issues presented by the present petition. It is stated, in *Griffith's Treatise,* at *pp. 191, 192, 209* (published in 1796), that the practice in pro-

curing letters testamentary in uncontested cases by means of proofs before surrogates was that the executor

"should attend, with the will and witnesses to its execution, at the surrogate's office in the county where the testator died, who will administer the proper qualifications, and procure the letters testamentary and copy of the will from the register's office in due season."

The oaths of the subscribing witnesses were endorsed on the back of the will by the surrogate, and the will, so endorsed, was forwarded to the register's office, where letters issued. These letters, so issued in the name of the ordinary by his register, though issued on proofs taken before a surrogate, would seem to be necessarily regarded as probates granted by the ordinary and appropriately subject to his control. This practice, however, could not have continued later than 1803. By the provisions of an act of November 9th, 1803 (*Bloomf. 96*), the surrogates were provided with seals of office and books of record, and were required to issue probates of all wills before them proved, and a form of letters testamentary to be issued by them in their name and under their hands and seals of office was prescribed by the act; they were also required to record in the books provided for that purpose all wills proved before them, together with the proofs thereof, and all letters testamentary granted by them and the records were given the same force, validity and effect as the like records in the registry of the prerogative office. These provisions were embodied in the Revised Orphans Court act of 1820, and have since been retained.

It thus appears that while the present petition invokes the exercise by the ordinary of that part of his jurisdiction which empowers him to entertain proofs of wills in solemn form, the exercise of that jurisdiction is here sought as a means to set aside and supersede a decree of probate of another judicial tribunal which has acted within its original jurisdiction and from whose decree the statutory period of review has expired.

It is urged in behalf of petitioner that the legislation already referred to cannot be deemed to deny to the ordinary the exercise of the remedy here sought without encroachment on the powers of the ordinary as confirmed to him by our constitu-

tions of 1776 and 1844, respectively. I am unable to adopt that view. As has been already suggested, it is specifically pointed out (*In re Goursen's Will, supra*) that the original Orphans Court act of 1784 removed from the surrogate's court to the orphans court that portion of the jurisdiction theretofore exercised by the surrogates in "contentious" matters and thus made the two courts share the jurisdiction theretofore exercised by the surrogates, and provided an appeal to the ordinary from the proceedings of each of the two courts, and subsequent legislation has limited the time for appeal and also provided that the appeal from the surrogate should be to the orphans court and thence to the ordinary. If prior to the establishment of the orphans court the ordinary in fact exercised the right to set aside probates which had been granted on proofs made before the surrogate through the procedure of allowing or ordering proofs of such wills to be made before him in solemn form (of which practice I have found no evidence), or through any procedure other than by appeal, legislation which provided an appeal to the ordinary from "all proceedings of surrogates" cannot be properly regarded as an invasion of that part of the jurisdiction of the ordinary already referred to, for by such appeal an unlimited scope of investigation touching the validity of a will was preserved to the ordinary. The effect of such legislation extends no further than the domain of mere procedure, and the subsequent statutory limitation of the period for such appeals must be regarded as of the same nature; legislation defining the procedure or limiting the time within which a writ of *certiorari* may be issued by our supreme court has never been regarded as an encroachment upon the jurisdiction of that court.

Nor can the power of the legislature to limit the period of appeal in matters of probate without regard to notice to parties in interest be doubted. No one has any right to the personalty of a decedent except such as the laws of the state allow; whether such personalty shall pass under an alleged will or under the statute of distributions is to be determined by reference to the laws of the state alone, and a determination made in conformity with those laws, even if made without such notice to individuals interested in the question as would be necessary to bar

ordinary rights of property, is conclusive. *Myers' Case, 69 N. J. Eq. 793* (at *p. 796*). As is stated in authorities hereinbefore cited, the proceeding is *in rem,* and a public necessity exists for prompt settlement of estates.

These views lead me to decline to issue the order to show cause which is sought by the petition.