## In re WALSH'S ESTATE.

[Argued June 30th, 1909. Decided November 15th, 1909.]

On appeal from the prerogative court. From a decree of the prerogative court, affirming a decree of the orphans court, sustaining exceptions to the final accounting of Ida E. Wagner, executrix, she appeals.

*Mr. Joseph Kaighn* and *Messrs. French & Richards,* for the appellant.

*Mr. Frederick A. Rex* and *Messrs. Grey & Archer,* for the respondents.

PER CURIAM.

The appeal in this case is from a decree of the prerogative court affirming a decree of the orphans court of Camden county sustaining exceptions filed to the final account of Ida E. Wagner, executrix of the estate of Elizabeth Walsh, deceased, by legatees under the will of the decedent. The prerogative court affirmed the decree of the orphans court upon the opinion delivered in that court by Joline, judge, which was as follows:

"The matters in controversy are contained in exceptions to the allowance of five items in the final account of Ida E. Wagner, executrix of the estate of Elizabeth Walsh, deceased. Elizabeth Walsh, who was the mother of the executrix, died upon the 25th day of December, 1904, having first made her last will and testament, dated February 25th, 1904, in and by which she left her personal property to her children, Ida E. Wagner, Clara J. Chadwick, Ellen M. Fennimore, Emma L. Deegan, and to a grandchild, Dora Meister. This will was admitted to probate on the 13th day of January, 1905, by the surrogate of the county of Camden, and letters testamentary were granted to said Ida E. Wagner and Clara J. Chadwick, who were named as executrices.

"At the time of her death, the testatrix was living with her daughter Ida E. Wagner, and the latter had possession of the will. Shortly after her mother's death she denied to Clara J. Chadwick, her sister and co-executrix, that there was a will or any money; but she subsequently admitted the existence of the will, and, as heretofore stated, it was probated. She still denied that there was any estate. Clara J. Chadwick thereupon instituted a suit against Ida E. Wagner in the court of chancery of this state for the purpose of setting aside certain assignments of mortgages, securities and property made by the testatrix to said Ida E. Wagner. By reason of promises, designed, I am satisfied, for ulterior purposes, made by the latter to the complainant, said suit was not prosecuted. Thereupon Ellen M. Fennimore and Emma L. Deegan, two of the legatees named in Mrs. Walsh's will, filed a bill in the court of chancery against the above-named executrices. It set out the death of Mrs. Walsh, the execution and probate of her will, and the issuance of the letters thereon. It then alleged: That the testatrix was, at the time of her death, owner of certain securities, moneys and furniture, the same as those set out in the final account in this proceeding; that because of advanced age, of feeble health, and weakened mental condition, and with slight expectation of life, she was induced by said Ida E. Wagner to go and live with her; and that the daughter, having secured the custody and physical control of the testatrix, who was wholly incapable of resisting the persuasions and entreaties of said daughter, the latter was fraudulently induced and unduly influenced, on or about the 1st day of April, 1904, to assign and transfer unto said daughter Ida E. Wagner, without any consideration, all of the above-specified personal property. It further alleged that said daughter had reduced certain of the securities to cash, and that she refused to account for any of them.

"The prayer of the bill was that these assignments should be set aside, and that they, together with the rest of said personal property, be declared to be the property of and a part of the estate of the said testatrix at the time of her death, to be duly accounted for and administered. A decree *pro confesso* was taken against Clara J. Chadwick; but Ida E. Wagner filed a

plea which alleged that for the assignment and transfer of all of said bonds and mortgages, shares of stock and other personal property in the bill mentioned, good and valuable consideration passed from the said defendant to the said Elizabeth Walsh. Issue was joined and the cause went to a hearing. It will be observed that the sole question at issue was the legality of the consideration, and that it related to all of the property named in the bill of complaint; it being the same property as that named in the final account in this proceeding. An examination of the testimony of Mr. Kaighn, in the chancery suit, discloses that fact that the testatrix wanted to assign this property to Mrs. Wagner, because she had a good home there, and that she intended to stay there the rest of her days, and that she wanted to turn those over to Mrs. Wagner on that account. Henry Wagner, the husband of Ida, attempted to show that the testatrix continued to live and be cared for by Mrs. Wagner until the time of her death; but his testimony seems to have made no impression other than that it 'was plainly introduced to bolster up a pretended consideration.' These were the only witnesses, and the vice-chancellor who heard the case held that the defendant had failed to sustain her plea, and that a decree would be advised setting aside the assignments and transfers of the property described in the bill of complaint, and the same decree to be held by the defendants as part of the estate of the testatrix to be administered by them as executrices. He intimated that, but for the fact that one party to the fund was not a party in the chancery proceedings, the accounting would have been required to be made in that court. *Fennimore* v. *Wagner, 73 N. J. Eq. (3 Buch.) 367.* The final decree, although holding that the complainants were entitled to the relief sought and prayed for by them in their bill of complaint, does not specifically mention the sum of $1,000. It is, however, apparent that it was a part of the subject-matter in controversy, for it is named in the bill, and the plea distinctly includes it in the words 'and other personal property in the bill mentioned.' The pleas, therefore, admit the possession of, and claim the ownership of, all of the bonds, mortgages, shares of stock and other personal property in the bill mentioned, and the right of Ida E. Wagner thereto was the single question in issue.

On appeal the decree of the court of chancery was affirmed, and Chief-Justice Gummere, who wrote the opinion, said that: 'We concur in the view expressed in the opinion of the vice-chancellor that the proofs therein specified do not sustain the plea.' *Fennimore* v. *Wagner, supra.* For technical reasons an attempt was made to reverse the decree; but they were held of no avail because of the failure to prove the entire plea.

"Ida E. Wagner, in her account, the said Clara J. Chadwick having been discharged as an executrix, charges herself with the proceeds of the sale of three of said mortgages, with the principal and interest of three others, with the amount realized from the sale of the stock of the Camden Fire Insurance Company, with household furniture valued at $200, alleged to be in her possession, and with cash amounting to $1,000, alleged to be in her possession. She prays allowance for said household furniture, claiming that she had never received it; for said cash, claiming that she had no knowledge of it; for part of the proceeds from the sale of mortgages advanced and paid by her to the testatrix, amounting to $816.80. This is the Abigail F. Hugg mortgage with which she had charged herself. She further prays allowance for claim of Ida E. Wagner for furnishing said testatrix with a home the rest of her days according to contract, $6,920, with interest from May 4th, 1904, to December 13th, 1907, $806.18—total, $7,726.18. The other allowances prayed for are the amount paid for premium on executrix's bond for proctor's fee and for commissions. The amount with which the accountant charges herself is $8,884.70, while the amount for which she prays allowance, exclusive of proctor's fees, is $10,-166.44, thus leaving a deficit in the sum of $1,281.74.

"To all of the items for which allowance is prayed, except that for the household furniture, that for surrogate's bill, and that for proctor's fees, exceptions were filed by Ellen M. Fennimore and the administrator of Emma L. Deegan, deceased; said Ellen M. Fennimore and Emma L. Deegan in her lifetime being the complainants in the suit in chancery hereinbefore referred to. When the account first came on for hearing, objection was made to the introduction of any testimony upon the first three items excepted to for the reason that they were part of the subject-

matter controverted in the chancery suit, and therefore *res adjudicata*. It was agreed, however, that the evidence should be heard and the matter disposed of upon final hearing. The doctrine of *res adjudicata* has been clearly defined in this state, and it is the law 'that the judgment of a court of competent jurisdiction on a question of law or fact, or on a question of mixed law and fact, once litigated and determined, is, so long as it remains unreversed, conclusive upon the parties and their privies, not only as to the particular property involved in the suit in which it is pronounced, but as to all future litigation between the same parties or their privies, touching the subject-matter, though the property involved in the subsequent litigation is different from that which was involved in the first.' 'All that is required in cases where the prior and subsequent litigations involve different things, to render the judgment in the first conclusive upon the parties in the subsequent, is that there shall be substantial identity in the subject-matter of the two, and that must always be the case, as is obvious where the judgment in the first rests on a decision of the same question substantially which is presented for decision by the subsequent.' *City of Paterson* v. *Baker, 51 N. J. Eq.* (*6 Dick.*) *57*. All that is necessary is that the right to relief in the one suit shall rest upon the same point or question which, in essence and substance, was litigated and determined in the first suit, and in such a case the parties and those in privity with them are concluded, 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' *Ibid., 51 N. J. Eq.* (*6 Dick.*) *53;* *Cromwell* v. *Sac County, 94 U. S. 351, 352; 24 L. Ed. 195.*

"Where the second action is upon a different claim or demand, but between the same parties, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. *City of Paterson* v. *Baker, 51 N. J. Eq.* (*6 Dick.*) *54.* See, also, *Mershon* v. *Williams, 63 N. J. Law* (*34 Vr.*) *401;* *Clark Thread Co.* v. *William Clark Co., 55 N. J. Eq.* (*10 Dick.*) *662;* *Mercer County Traction Co.* v. *U. R. R. & Co., 64 N. J. Eq.* (*19 Dick.*) *594.* The judgment is final be-

tween the parties as to all defences which were or could have been set up in the earlier suit. *Thompson* v. *Williamson, 67 N. J. Eq. (1 Robb.) 212, 214.* 'It is not necessary that the action in which the judgment is found, and that in which it is relied on as an estoppel, should be of the same kind, or for the same cause of action.' *Sawyer* v. *Woodbury, 7 Gray (Mass.) 502; 66 Am. Dec. 518; City of Paterson* v. *Baker, 51 N. J. Eq. (6 Dick.) 54.* The doctrine is not a mere rule of procedure, but a rule of justice unlimited in its operation, which must be enforced whenever its enforcement is necessary for the protection and security of rights and for the preservation of the repose of society. *City of Paterson* v. *Baker, 51 N. J. Eq. (6 Dick.) 59; Putnam* v. *Clark, 34 N. J. Eq. (7 Stew.) 540.* It is a rule of law based upon two grounds: The first, that there should be an end to litigation, and the second, that a person should not be twice vexed for the same cause. *24 Am. & Eng. Encycl. L. (2d ed.) 713, 714,* and cases cited.

"Referring now to the exceptions, it will be seen that the first is to the prayer for allowance of $1,000, and that the second is to the prayer for allowance of the proceeds of a mortgage claimed to have been advanced to the deceased, amounting to $816.80. This is the Abigail F. Hugg mortgage, with the proceeds of the sale of which the accountant charges herself. The conclusion which I have reached with regard to these items is that they are *res adjudicata.* An examination of the record in the chancery suit will show that each was included in the bill of complaint, and that the plea makes no exception, but alleges that all of the said bonds, mortgages, shares of stock and other personal property, in the bill of complaint mentioned, passed to the said Ida E. Wagner for a good and valuable consideration. The decision of the court was unquestionably adverse to this contention and necessarily included everything named in the plea. The defendant adopted a certain procedure, the legal effect whereof was an admission that she had in possession as owner certain things, including these two items excepted to, and the court rendered a decision, the legal effect whereof was that she did not own said mortgage, and said money of which she admitted that she had possession, and that she should turn them over to the estate of

the testatrix. If they had not been in her possession, would she have adopted a procedure which admitted possession? After having alleged in the chancery suit that she had them in possession, and having submitted the ownership thereof to the decision of that court, she should not now be allowed to play fast and loose with courts, and with the administration of justice, and be permitted to deny that which she admitted in the previous suit. Otherwise, we would strike at the basic principle of the doctrine of *res adjudicata,* would justify trifling with legal procedure and with the stability of legal decisions. Lord Rosedale once said that it was more important that an end should be put to litigation than that justice should be done in every case. *Beteman* v. *Willoe, 1 Sch. & L. 201; Dunham* v. *Downer, 31 Vt. 250, 256; Schumann* v. *Weatherhead, 1 East 537; Claggett* v. *Simes, 25 N. H. 402.*

"The third exception is to the item wherein the accountant claims compensation for furnishing Elizabeth Walsh with a home for the rest of her days according to contract. The amount claimed is $6,920, with interest from May 4th, 1904, to December 13th, 1907, amounting to $806.18, making a total of $7,726.18. The amount claimed, less the interest, is the aggregate amount of the mortgages and of the Camden fire insurance stock set out in the bill of complaint. In this claim there is included the Abigail F. Hugg mortgage, which is the subject of the second exception, and with which the accountant charges herself, and for which she claims allowance twice, once in the third item of her prayer for allowance, and once as a part of the fourth item.

"In the chancery suit the defendant claimed each of said mortgages and said stock upon an assignment made by the decedent based upon a good and valuable consideration; the same being substantially an agreement to keep her mother during the rest of her days. She offered very little evidence in support of the alleged consideration, and the determination of the court was as follows: 'On this evidence I find that the defendant has not supported her plea that this $8,000 of property was transferred to her by the testatrix for a good and valuable consideration.' Proof of the assignment of three of the mortgages only was

offered. On appeal the defendant based her contention for a reversal upon legal grounds which were not tenable because of her failure to prove her entire plea. She had the right and the opportunity to prove it, and could have produced all of the witnesses offered in this matter, but did not even attempt to. The decision of the court is against her upon the entire plea, and the rule that a judgment is final between the parties as to all defences which were or could have been set up in the earlier suit, provided the later suit involves substantially the same matters between the same parties. The contention of the accountant (the defendant in the chancery suit) is that her present claim is different from that in the chancery suit, and that in the latter she claimed the assignment of certain property because of an agreement upon which the assignment was founded, while she now claims, not this property, but the value thereof, because of the consummation of said agreement, and that it must be enforced, even though it be unconscionable. Each is founded upon the same contract, namely, the agreement to care for and keep the decedent the rest of her days. The voucher for this prayer of allowance has attached to it an affidavit made by Mrs. Wagner to the effect that her mother came to live at her [Mrs. Wagner's] home in the month of February, 1904, and that shortly after that she offered and promised to give her six mortgages of the value of $6,200, and some stock of the Camden Fire Insurance Association of the value of $720, if she would furnish her with a home for the rest of her days; that, not knowing whether her life would be long or short, she consented and agreed to this, and did accordingly furnish her with a home for the rest of her days, for which the sum of $6,920, with interest thereon from the 5th day of May, 1904, amounting to $806.18, is justly due and owing to her from the estate of said decedent.

"It will be seen that the foundation for this claim is the same as that in the chancery suit for the assignment of the mortgages and other property, namely, the agreement to care for the mother. It was decided that it did not furnish a good consideration therefor, and I think that that decision is *res adjudicata* as to the present proceeding, where, upon the same agreement, the defendants in the preceding suit claim, not the mortgages and other

property, but the proceeds thereof. The present claim is not based upon the *quantum meruit* for services rendered. The subject-matter in the two suits is substantially the same; in the one certain personal property, and in the other the proceeds thereof. The main question in each is the same. The alleged agreement and the contending parties are the same; the only difference being that since the ending of the chancery suit one of the complainants has died, and in this proceeding she is represented by her administrator.

"The fourth exception is the claim of the accountant for the premium of $52 paid for her bond. It is true that she was ordered by the court to give a bond; the alternative being her discharge as executrix. I think that she should be allowed this charge. The security was demanded by the very parties who now except to the expense occasioned by their actions, and, if the executrix had failed to furnish the bond and had been discharged, the substituted administrator would have been obliged to furnish one, incurring in all probability the same expense. On the allowance side of the account there is a space left for proctor's fees. A fair allowance should be made for services rendered to the accountant by her proctor; but it cannot include any allowance for services rendered in the chancery suit, or in this procedure in support of the items for which Ida E. Wagner advances a claim. With respect to said suit and to those items, she personally must compensate her counsel. I will hear counsel as to a proper allowance.

"The fifth exception is to the claim for commissions. Full commissions are claimed even on the sum of $200 for household furniture, for which allowance is prayed and not excepted to. The rule is that allowance shall be made with reference to the actual pains, trouble and risk in settling the estate rather than in respect to the *quantum* of estate, and that it shall not exceed certain rates. *P. L. 1898 p. 762 §§ 128, 129.* There was slight trouble and no risk incident to the settlement of this estate. The moneys were well invested, and there seem to have been no debts. The entire duty of the executrix consisted in keeping the estate intact, in collecting the income, in attending to the few matters required by law to be done, such as probating the will, making and filing an inventory and appraisement, taking the

necessary rules to bar creditors, filing a final account and dis-tributing the balance in her hands.

"It cannot be said that the conduct of the executrix, Ida E. Wagner, exhibited sincerity and candor. After her mother's death she denied that there was a will or any estate. She later admitted that there was a will, but denied that there was any estate. When a suit was commenced by Mrs. Chadwick, in chancery, to have the property in her custody declared the property of the estate, she induced her in some way not to prosecute it, and it was only after being cited to do so that she filed the final account now under consideration. She knew that her right to the property left by her mother was disputed by the heirs, and, even after she induced Mrs. Chadwick not to proceed against her, she knew when the bill was filed by Ellen M. Fennimore and Emma L. Deegan on November 10th, 1905, that such dispute still existed. Knowing this, and knowing that the case might be decided against her, it was her duty to conserve the estate, and if she disposed of any portion of it to invest the moneys. Instead of doing this, she charges herself only with the amount realized from the sale of certain of the securities, as follows: Hugg mortgage of $800, $816.80; Baxter mortgage of $1,200, $1,242.23; Baxter mortgage of $700, $733.36; Camden Fire Insurance Company stock (seventy-two shares), $720.

"The mother died on December 25th, 1904. It was not proved when the Chadwick suit was commenced; but the Fennimore suit was commenced in November, 1905, and the file in this court shows that steps were taken prior to that to bring Mrs. Wagner to account. She knew, therefore, that her right to this property was seriously disputed, and she should have treated the entire property, both principal and interest, as possibly belonging to the estate of her mother, and as such it was her duty to keep it invested. She appears not to have done this with regard to the above items. They aggregate $3,420. They had been, and probably were, invested, and, at five per cent. per annum, the income would have been about $171 a year, and for two years alone, $342, nearly the amount of the commission. The executrix charges herself on these sums above the principal with only $92.39, for I assume that, as there were seventy-two shares of the stock of the insurance company, and it sold for $720, the price

per share was $10, and that no part of the $720 represents interest. As a fact, the executrix had this property from the time of her mother's death, and the income amounted to far more than her commissions. She took the risk of selling it pending the disputes as to her ownership, and is chargeable with the result. It is true that no exception has been filed asking that she be surcharged with this interest; but I think it should be considered in determining her right to commissions, and in doing so, I have reached the conclusion that commissions should not be allowed. Commissions are allowed as compensation for the faithful discharge of duty, and I fail to see how an executrix, who, pending a dispute which may be decided adversely to her, not only disposes of securities, but allows funds to lie idle, has done her duty. The estate is a loser by reason of her management. *Frey* v. *Demarest, 17 N. J. Eq. (2 C. E. Gr.) 71; McKnight* v. *Walsh, 23 N. J. Eq. (8 C. E. Gr.) 136; Ibid., 24 N. J. Eq. (9 C. E. Gr.) 498; Hetfield* v. *Debaud, 54 N. J. Eq. (9 Dick.) 371; Fluck* v. *Lake, 54 N. J. Eq. (9 Dick.) 644; Blauvelt* v. *Ackerman, 23 N. J. Eq. (8 C. E. Gr.) 495; Ackerman* v. *Blauvelt, 25 N. J. Eq. (10 C. E. Gr.) 570; In re Booth's Estate, 26 N. J. L. J. 76.*

"The conclusion reached is that the first, second, third and fifth exceptions should be sustained, and that the fourth exception should be dismissed. This determination having been reached upon the application of the above principles of law, it is unnecessary that the evidence adduced should be further considered."

PER CURIAM.

We concur in the view of the prerogative court that the decree of the orphans court was properly made, and are satisfied to rest our conclusion upon the very satisfactory opinion of Judge Joline.

The decree under review will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON—14.

*For reversal*—None.