This is an application made by the widow and the three surviving children of William O. Allison, deceased, for an order compelling the executors named in his last will and testament to probate said will in solemn form.
From the evidence adduced before me, it appears that Mr. Allison, then a resident of Englewood Cliffs in this state, died on December 18th, 1924, possessed of an estate, the appraised value of which was in excess of $3,000,000, and left him surviving his wife, Caroline A. Allison, and three children, John Allison, Katherine MacLean and Frances Allison Noice Schouten, all of whom are the present petitioners. By his will, dated July 11th, 1924, he failed to make any provision for his wife and children, and, in paragraph ten thereof, gave as his reason therefor the fact that he had already made adequate provision for each of them by means of trusts, which he had previously created for their benefit and the corpus of each of which trusts was $150,000, and the income from which went to them.
By paragraph two of his said will, the testator made Harry J. Schnell and Frank V. Baldwin the executors and trustees thereof and vested them with the power to sell real estate by paragraph twelve thereof. After making provision for an annuity of $300 per year and the payment of a number of specific bequests, aggregating the sum of $28,750, the will provides for the use and distribution of the residue of the estate in the manner and form prescribed by the first and eleventh paragraphs thereof, which provide as follows:
"I. It is my desire and intention to dispose by gift of a large part of my remaining estate for the purpose of pleasing Almighty God, benefiting my fellow man, and as far as possible developing that section of the Palisades along the Hudson, located in the borough of Englewood Cliffs and vicinity.
"XI. All the rest, residue and remainder of my property, real and personal, whatsoever and wheresoever situate not hereinbefore specifically bequeathed, I give and devise and bequeath unto my said *Page 57 
trustees, in trust nevertheless, to maintain and develop in accordance with my known wishes, the Palisades along the Hudson, in the borough of Englewood Cliffs, and vicinity. I am now formulating more definitely plans for the development and maintenance of said Palisades, and to that end have requested two prominent residents of the city of Englewood to submit to me a plan for such development and maintenance. If such plan is submitted and receives my approval, then I direct my trustees to use this trust fund for the purpose of carrying out such plan. If, however, such plan does not receive my approval, then I order and direct my said trustees to use this trust fund for the development and maintenance of said Palisades section in accordance with my wishes as expressed to them."
This will was proven in common form in and admitted to probate by this court on December 30th, 1924, and immediately thereafter said Harry H. Schnell and Frank V. Baldwin qualified as executors and trustees thereunder, and have, ever since, been acting as such. On February 9th, 1925, or about seven weeks after her father's death, Frances Allison Noice Schouten, one of the present petitioners, filed a bill of complaint in the court of chancery, wherein she admitted said will to be the last will and testament of her deceased father and prayed that the provisions thereof with reference to the application and distribution of the residuary estate be declared and decreed to be invalid, claiming that they did not constitute a charitable trust and were violative of the rule against perpetuities. In addition to her mother, brother and sister, she also named the executors and trustees of said will, as parties defendant to said suit. Subsequently, upon petition therefor, the attorney-general of this state was admitted as a party defendant and permitted to defend said suit on behalf of the state.
To this bill, Caroline A. Allison, John B. Allison and Katherine MacLean, the mother, brother and sister, respectively, of the complainant, filed a joint answer and counterclaim, whereby they admitted the allegations of the bill and joined in the prayer for the relief sought by complainant. The attorney-general and the executors and trustees also filed answers in which they, however, claimed that the devise and bequest provided for by the residuary clause was for a charitable purpose and, therefore, was valid. Issue having *Page 58 
thus been joined, the case was in due course referred to a vice-chancellor, who, after a hearing, determined that said residuary clause was invalid, and directed the executors and trustees to make distribution of said residuary estate amongst the said complainant, her mother, brother and sister, in accordance with an agreement made between them on March 13th, 1925, by the terms of which they had agreed to an equal division of said residuary estate between them. Noice v. Schnell,99 N.J. Eq. 572.
From the decree entered, in accordance with that determination, the attorney-general and the executors and trustees appealed to the court of errors and appeals, which court, after argument, reversed the lower court (case reported 101 N.J. Eq. 252), pursuant to which a decree was entered which, after providing for a reversal of the decree of the court of chancery, provides as follows:
"And that a decree be entered in this court for the defendants-appellants, Harry Schnell and Frank V. Baldwin, executors and trustees under the last will and testament of William O. Allison, deceased, and Edward L. Katzenbach, attorney-general, adjudging and decreeing that the clause of the last will and testament of William O. Allison numbered 11, which purports to dispose of all the rest, residue and remainder of his estate is valid and that the said Harry H. Schnell and Frank V. Baldwin, as executors and trustees, under said will, have power and authority to carry out the provisions of said clause and to use and dispose of the residuary estate therein devised and bequeathed for the purpose of maintaining and developing," c.
From the determination made and the decree so entered, the present petitioners attempted to appeal to the United States supreme court, in which attempt, however, they were unsuccessful, since that court denied their application for a writ ofcertiorari in connection with enabling them to sue out said appeal. It was only after all of these appellate proceedings had terminated adversely to them, that the petitioners made their present application to this court to compel the executors to probate said will in solemn form, predicating *Page 59 
said application upon the testator's alleged lack of testamentary capacity.
The power of the ordinary to require a will, which has been proven before him in common form, to be reproven before him in solemn form is now so well established and so generally recognized that the citation of authority so holding is unnecessary. Ever since the case of In re Hodnett, 65 N.J. Eq. 329,
wherein may be found a careful review of all of the ancient and modern authorities on the subject, it has been definitely settled that such power and jurisdiction resides in the ordinary. In that case, Chancellor Magie (on p. 342) said:
"For these reasons, I deem myself possessed of the authority to require an executor who has proved a will before me without notice, to prove the same will with notice to all the parties wherever a proper case for such action is presented."
The Hodnett Case, supra, has received recognition and been cited with approval in the recent cases of: In re Whitehead'sEstate, 85 N.J. Eq. 114, and In re Harrison, 94 N.J. Eq. 145.
As there stated, the exercise of this power rests in the sound discretion of the court and should be exercised only when a proper case for such action is presented. In re Harrison,supra.
Now turning to the evidence adduced before, I find therefrom the following undisputed facts: Caroline Allison, John B. Allison and Katherine MacLean, three of the present petitioners, knew of the contents of the will and of the testator's alleged lack of testamentary capacity before the said will was offered for probate. Frances Allison Noice Schouten, the other petitioner, had acquired similar knowledge by no later than the latter part of January, 1925. On or before this last mentioned date, all of them were sui juris and free of any disability which would have prevented them, or any of them, from contesting the validity of said will, because of the testator's alleged want of testamentary capacity, or any other reason, had they seen fit to do so.
Instead, the said Frances Allison Noice Schouten caused *Page 60 
a bill of complaint to be filed in our court of chancery, wherein and in which judicial proceeding she solemnly admitted the will, there and here involved, to be the last will and testament of her father, William O. Allison, deceased, and prayed that its provisions, relating to the residuary estate alone, be declared and decreed to be invalid. Had she so desired, she, even after her arrival in this country on February 14th, 1925, could very easily have secured permission to withdraw her bill and could have discontinued her said suit by merely instructing her solicitor to do so, because her bill had only been filed on February 9th, 1925, and the defendants had not answered until April 6th, June 6th and July 2d 1925, respectively. She, however, and the other petitioners herein as well — although all of them then had, and ever since have had, knowledge of all the facts upon which their present application is predicated — elected and saw fit to permit their respective admissions, appertaining to the due making, c., of said will, to stand and to prosecute said suit to a final conclusion.
In other words, each of these petitioners, by their respective pleadings in said prior suit, solemnly admitted that the will in question was, in fact, the last will and testament of William O. Allison, deceased. Without such an admission, it is obvious that the court of chancery neither could, nor would, have assumed jurisdiction of said suit. Hence, it follows, of necessity, that said court, in taking jurisdiction of and deciding said case, acted upon such admission, which constituted one of the requisite jurisdictional facts. Yet, notwithstanding such, the petitioners, by their present application, seek the permission of this court to here contest the testator's testamentary capacity, despite the fact that they themselves had solemnly admitted it in the prior proceedings. Thus, they now take a position entirely different from and inconsistent with that originally taken by them in the prior suit relative to this very same will. Now they assert, for the very first time, that this very will is invalid, in toto, because of the testator's alleged lack of testamentary capacity. Should they, under such circumstances, be permitted to do so? *Page 61 
In the early case of Sheffield v. The Dutchess ofBuckinghamshire, 1 Atkyns 628, the Duchess sought to compel the probate in solemn form of a will, the validity of which she had admitted by her answer filed in a prior suit. The Lord Chancellor (Lord Hardwicke) in holding that she was precluded fom obtaining the relief sought by her because of her said admission, said:
"It is objected that this court has presumed the will and codicil to be well proved on the probate only, which has never yet been contested in the proper court.
"But it is not so, for here the probate has been strengthened by the admission of the parties concerned, and as to the matters of fact, an admission by a party concerned, and who is most likely to know, is stronger than if it had been determined by a jury, and facts are as properly concluded by admission as by a trial; as in writs of error, the party may admit error in fact, though he cannot admit error in law; and if this court was not to conclude on such admissions, there would be no end of cause here, where there is no jury at the bar."
And further said:
"But if it comes here on an incident in a cause, and that incident is admitted by the parties, this court, or a court of law, may determine it, and hold the parties bound by their admission; and if either of the parties would afterwards bring a new suit to contest that determination, this court will certainly grant a perpetual injunction."
In Wynne v. Spiers, 26 Tenn. 294, Elizabeth Prince, in contemplation of marriage, conveyed to one Charles Spiers, for her sole use and benefit, real and personal property of the value of $20,000, after which they married each other. Subsequently she instituted suit for divorce and in said proceeding, amongst other things, prayed that her said husband be divested of all title in and to the property previously conveyed by her to him and that same be vested in her absolutely. By her will, made prior to the institution of said proceedings, she had devised all of the said property to her mother. During the pendency of her said suit, a compromise *Page 62 
was effected with regard to this and other property, but before the termination of said suit and the consummation of said compromise, Mrs. Spiers died. After the probate of her will, and the qualification of the executor thereof, her husband, for the purpose of consummating the stipulations of the said compromise, revived the said suit against the executor and had a decree entered in conformity with the terms of said compromise. Subsequently he caused the executor to be cited to show cause why the probate of said will should not be contested, and in response to which the executor pleaded the foregoing facts, claiming that Charles Spiers was thereby estopped from questioning the validity of said will. On the appeal of the executor from an adverse determination, the appellate court, in reversing the lower court, held that the husband was estopped from claiming that the will under which the executor was appointed was invalid, since he had revived the suit against his wife's executor, and had thereby admitted the validity of her will. On page 409 of its opinion in that case, the court said:
"Shall the husband now be permitted to escape from this decree, from his solemn averment, of record, that a last will and testament had been duly made, published and proved, and be allowed to set aside said probate? We are clear that he shall not be so permitted."
The foregoing principles have also received the recognition and approval of our own courts. Our court of errors and appeals, Inre Walsh's Estate, 80 N.J. Eq. 565 (at p. 571), said:
"After having alleged in the chancery suit that she had them in possession, and having submitted the ownership thereof to the decision of that court, she should not be allowed to play fast and loose with the courts, and with the administration of justice, and be permitted to deny that which she admitted in the previous suit. Otherwise we would strike at the basic principle of the doctrine of res adjudicata, would justify the trifling with legal procedure and with the stability of legal decisions."
This doctrine is not a mere rule of procedure, but one of *Page 63 
justice, unlimited in its operation, which must be enforced whenever its enforcement is necessary for the protection and security of rights, as well as for the preservation of the stability and repose of society. City of Paterson v. Baker,51 N.J. Eq. 49; Putnam v. Clark, 34 N.J. Eq. 532.
In the case of Cleaves v. Yeskel, 104 N.J. Law 497, our court of errors and appeals, on page 504 (our present learned chancellor, delivering the opinion) said:
"The defendants having alleged that the verdict was against the charge could have alleged in the court below any other matter in respect to that charge which they desired to exploit on the rule, and are concluded by the decision thereon as to everything they could have urged. Doubtless, however, they could not there have argued that the charge was both right and wrong; neither can they do so between the court below and this court.
"Here we have a change of position on appeal, and that is not permitted. A defendant on rule to show cause cannot say that the verdict was against the charge of the court, without affirming that the court was right and the jury was wrong. Being defeated on the rule to show cause, he cannot afterwards say that the court was wrong, and if, in the respects pointed out, the court had made a proper charge or refrained from making an improper one, the verdict should and might have been different. In other words, defendant cannot take an inconsistent position between the trial court on rule to show cause and the appellate court on error or appeal.
"A party may take alternate positions as to certain matters or things, but not inconsistent ones with reference to the very same identical matter or thing."
Applying the principles, as expressed in the foregoing cases, to the facts and circumstances as they exist in the case at bar, I am satisfied, to say the least, that it would be both inequitable and improper to now permit the petitioners to deny the due making, c., of this will, especially in view of their solemn admissions to the contrary in the prior chancery suit. Nor does the fact that said prior suit terminated *Page 64 
adversely to the petitioners, afford any reason or justification for permitting them to do so. For me to hold otherwise, would be tantamount to relieving the petitioners from the binding effect of their respective admissions, solemnly made in order to induce the court of chancery to assume jurisdiction of and to determine said case, so as to now enable them to contest the very facts which they, by their said admissions, had previously conceded. Thus they, by sanction of this court, would be permitted to play fast and loose with the court of chancery and this court, and they would be permitted to here assume a position entirely different from and inconsistent with that taken by them in the court of chancery with reference to this identical will. Such attempts have already been frowned upon and in unmistakable language condemned by our courts in a number of cases, the more recent of which are In re Walsh's Estate, supra, and Cleaves
v. Yeskel, supra.
It must be conceded that, without their admission that the will in question was, in fact, the last will and testament of William O. Allison, deceased, the petitioners would not have been entitled to even ask the court of chancery to pass upon the residuary clause thereof. The fact that this will was duly made, published and probated lay at the very basis and root of that chancery suit, it was both an essential and indispensable jurisdictional requisite, and, as such, was admitted by the petitioners by their respective pleadings and in the course of that solemn judicial proceeding in order to secure the court's determination thereof. The court of chancery, by reason of said admission, having assumed jurisdiction of that suit and same having already been finally determined adversely to the petitioners, it does seem to me that the due and orderly administration of justice demands that these petitioners be not permitted to now be heard to deny the identical facts which they had already solemnly admitted in said prior suit.
To permit litigants to play fast and loose with the courts, is to strike at the very foundations and bulwark of our entire system of jurisprudence and the due and orderly administration *Page 65 
of justice. To permit such would be to subvert the preservation of the public security and repose which requires that an end be brought to all litigation. For me to grant the petitioners' present application would be to ignore these wholesome and well-established principles and to encourage endless litigation. Such a situation, it is needless for me to say, is repulsive and abhorrent to our plainest principles of justice and the due and orderly administration thereof. All the authorities in well-defined and unmistakable language have condemned such a condition.
It may now be well argued, and in my opinion, not without great force and merit, that the said admissions made by these petitioners in the prior chancery suit, coupled with the decree therein entered, are now conclusive and res adjudicata as to all matters and facts embraced in and conceded by said admissions, which, as is hereinbefore pointed out by me, were necessarily involved in the determination made by that court in said suit. Sheffield v. The Dutchess of Buckinghamshire,supra; Wynne v. Spiers, supra; In re Walsh's Estate, 80 N.J. Eq. 565; Cleaves v. Yeskel, supra; City of Paterson v. Baker,51 N.J. Eq. 49; Cromwell v. Co. of Sac, 94 U.S. 351, 352;24 L.Ed. 195; Thompson v. Williamson, 67 N.J. Eq. 212, 214;Sawyer v. Woodbury, 73 Mass. 499. If such be the fact, then it is obvious that the petitioners would, as a matter of law, be precluded from obtaining the relief now sought by them, and the application for which is based and founded upon theory that the matters and facts embraced in said admissions have not yet been judicially determined and, therefore, still remain open to controversion. However, I do not now find it necessary for me to determine this question in arriving at the conclusion which I have in this case.
A careful reading and consideration of all of the evidence adduced before me, coupled with its attendant circumstances, constrains me to conclude that the case as thereby made is not "a proper case" for the exercise of that sound discretion of this court to which an application, such as the present one, is addressed. The fact remains undisputed that Frances *Page 66 
Allison Noice Schouten acquired knowledge of the contents of her father's will no later than January, 1925, while the other petitioners possessed such knowledge even before it was offered for probate. That all of them then were, and ever since have been, sui juris is conceded. Nevertheless, notwithstanding these facts, none of them ever attempted to question or challenge the legality of this will by reason of testator's alleged lack of testamentary capacity, or otherwise, until their present application, which was made more than three years after the testator's death, and then only after all prior litigation in connection therewith had terminated adversely to them.
During this long period of delay, this estate had been vexed with protracted and costly litigation, which was initiated by these petitioners. Ever since they qualified, more than four years ago, the executors and trustees have devoted a great amount of their time and energy to the management of this large estate and the performance of the duties of their office. Bequests made under this will have already been disbursed and a great many hundreds of thousands of dollars have been already expended by the executors in the care and management of the property and vast interest of this estate. Due to the prior litigation, the carrying out of this charitable trust, in which the people of this state have an interest, has already been delayed for over four years. Doubt and confusion has beclouded the marketability of, and the title to, the vast property holdings of this estate, ever since the institution of the prior proceedings, and which chaotic state of affairs will be renewed by the granting of this application. Such a condition would be contrary to public policy, since the interest of the public requires that stability in the title to property should exist, and that all uncertainties and disputes as to the ownership thereof, especially in land, should be speedily put at rest, and to which end, it is the duty of courts to discourage delays in the assertion of conflicting claims thereto.
For their delay in asserting their claims against the validity of this will, and thus to the property of this estate, the *Page 67 
petitioners offer and advance no excuse whatsoever, other than that they desired, as much as possible, to protect the memory of their father. Yet, notwithstanding this alleged altruistic feeling and paternal devotion on their part, the petitioners, without any hesitancy or apparent compunction on their part, now attack and assault the will and memory of him who concededly was their benefactor, and this for no apparent reason at all other than the possibility, although remote and highly problematical, of thus being able to procure for themselves, that which it was his solemn desire and will should go for charitable purposes and not to them, for all of whom he, in his judgment, had already made adequate provision.
Judged in the light of their present actions and conduct, I must confess that I am neither improssed with, nor can I look with favor upon, the sincerity of the reason advanced by them for their delay in the assertion of their claim that the said will is invalid, because of the testator's alleged lack of testamentary capacity. Nor am I to be understood to hold that such reason, even if sincere, would be sufficient to justify or excuse this long delay on their part under the facts and circumstances existing in this case. Upon an application addressed to the sound discretion of the court, such as is the one before me, nothing but merit, conscience, good faith and reasonable diligence call forth the activity of this court.
From all of the facts and the circumstances existing in the case before me, I am satisfied, and of the opinion, that the case as here made by the petitioners does not justify or warrant this court in exercising in their favor that sound discretion with which it is vested in applications of this character and to which same are always addressed. In re Harrison, 89 N.J. Eq. 539, and earlier cases therein cited. The petitioners' application is therefore denied, and an order may be entered in conformity with this opinion. *Page 68