[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 458 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 459 
The plaintiff, by his amended bill of complaint, alleges that a certain deed from Mary J. Watson, dated May 22, 1941, conveying premises in Cumberland County, New Jersey, was altered after execution and delivery by the erasure of his name and the name of Verna G. Stretch, his wife, to whom the property was conveyed as tenants by the entirety, and the substitution of the name of Adah B. Sox. The plaintiff further alleges that the said Adah B. Sox thereafter conveyed the premises to the defendant Wallace A. Halter by deed dated February 13, 1943. It was admitted that Adah B. Sox was a "straw" for Verna G. Stretch and that the said Verna G. Stretch received all of the proceeds of the sale to Wallace A. Halter. Plaintiff seeks to have the conveyances of May 22, 1941, and February 13, 1943, declared void; to establish an interest in said premises as a tenant in common, he and Verna G. Stretch being now divorced, and to that end to obtain a conveyance from Wallace A. Halter and Ida Halter; and to obtain an accounting for the rents, issues and profits of said premises from Adah B. Sox, Wallace A. Halter and Ida Halter.
This matter originally came on to be tried before Vice-Chancellor Berry, who decided the primary issue, i.e.,
that the conveyance from Mary J. Watson had been altered by Verna G. Stretch prior to recording, without any authority or knowledge of the plaintiff at that time (as alleged in the complaint).
The alteration of a written instrument, by a change in the name or description of a party, which changes the legal identity or character of such party, or the identity of the instrument, is ordinarily regarded as material in character. Such a change by one of two grantees named in a deed, unauthorized by the second grantee, serves to avoid it. 2 Amer. Jur. 598, 641; Hunt v.Gray, 35 N.J.L. 227; Jones v. Crowley, 57 N.J.L. 222, 30 A. 871; Schmidt v. Quinzel, 55 N.J. Eq. 792, 38 A. 665. The alteration herein avoided the deed.
Subsequent to the hearing before Vice-Chancellor Berry the plaintiff filed an amended complaint and the several defendants *Page 461 
filed answers, counterclaims and third party complaints. In so far as the present litigation is concerned, the third party complaint against William Gallner may be ignored, counsel having so stipulated. The defendants Halter have filed a counterclaim against Adah B. Sox and Verna G. Stretch, seeking the recovery of pecuniary losses which will be suffered by them in the event the plaintiff succeeds in his main case.
In view of the learned Vice-Chancellor's findings, it is now necessary to consider only the defenses of the defendants Wallace A. Halter and Ida Halter, who contend that the plaintiff is not entitled to the relief sought, on the following grounds: (1) that although the plaintiff and Verna G. Stretch, under the opinion of the learned Vice-Chancellor, were found to have had the legal title, they held the same in trust for their children, and plaintiff cannot now, therefore, maintain this action in his individual capacity; (2) that he is estopped both by his passive actions in being silent when it was his duty to speak, and his affirmative actions; (3) that he is prevented from recovery by reason of waiver; (4) that he is prevented from recovery because of his laches. In the event that the conclusions here reached sustain the plaintiff, it will also become necessary to consider the counterclaims.
In connection with the testimony adduced at the time of trial, I find the following facts: It is apparent that the motivating factor in the background of this litigation is the marital difficulties which existed between the plaintiff and his wife Verna. In order to reach a proper conclusion as to the several defenses it is necessary to consider, among other facts, the marital relationship, the suits concerning the same and the resulting judgments, orders and conduct of the parties.
On January 21, 1931, plaintiff and Verna G. Stretch were married at Lodgepole, Nebraska. Thereafter and prior to the year 1941 the plaintiff commenced his first action for divorce in the State of Nebraska. This action was subsequently discontinued. On January 13, 1941, the plaintiff *Page 462 
filed his second action for divorce in the State of Nebraska and at that time entered into a property settlement stipulation as required under the laws of the State of Nebraska. As a result of this stipulation, Mrs. Stretch quitclaimed her interest in the property at Lodgepole, Nebraska, to the plaintiff, and her interest in the funds arising from the sale of a ranch, which sale was in the amount of $10,000. Plaintiff paid to Mrs. Stretch the sum of $500 and transferred to her one Studebaker automobile. The plaintiff, in addition, deposited $3,000 with the Clerk of the court, to be paid to Mrs. Stretch as trustee, in installments, for the support and maintenance of the two children born of the marriage. On April 14, 1941, in accordance with the laws of the State of Nebraska, plaintiff and Verna G. Stretch petitioned the court of Nebraska for a vacation of the decree of divorce, and to have "the trust funds now in the hands of the clerk released to both parties jointly." On May 10, 1941, a decree was entered in the Nebraska court vacating the divorce decree. On May 15, 1941, the $3,000 check received from the Nebraska court, which had been deposited as above set forth, was cashed by the Stretches and used to purchase the farm at Shiloh, New Jersey, which is the subject of this suit. From March, 1941, to on or about January 15, 1942, both plaintiff and Mrs. Stretch were residents of the State of New Jersey, living the greater part of the time on the Shiloh farm. On January 15, 1942, the plaintiff returned to Nebraska. Verna G. Stretch was left without funds to support and maintain the two children on the farm here involved. She was obliged to seek employment at Bridgeton, New Jersey, which is located some five miles from Shiloh. This necessitated her absence from the children during the day, a condition which greatly worried her. In addition, the living conditions at the farm were such as made it not for the best interests of the children to be left there. It occurred to her that since the purpose of the purchase of the Shiloh property was to furnish an adequate home for the children, if it could be sold and the proceeds invested in a Bridgeton home, the desired result would be accomplished. *Page 463 
On January 14, 1943, the erasures complained of in the deed from Mary J. Watson were made by Verna G. Stretch. The Shiloh property was then sold to Wallace A. Halter and with the proceeds a residence was purchased in Bridgeton, New Jersey, from Katherine Crook. Title to this property was taken as follows: "Verna Stretch, Trustee for Mary Ellen Stretch and Thomas M. Stretch, Jr."
On August 30, 1943, plaintiff filed a third petition in the State of Nebraska, seeking a divorce from Verna G. Stretch. More particular reference to this petition is hereinafter made. On October 12, 1943, the divorce was granted to the plaintiff from Verna G. Stretch in the State of Nebraska. Under this decree, no provision was made for the support of either Verna G. Stretch or their two children, but custody of the children was granted to the said Verna G. Stretch. The ground for divorce was desertion in each of the petitions filed by the plaintiff. On May 8, 1946, the original bill of complaint herein was filed.
Under defendants' first contention, it is argued that the conveyance from Mary J. Watson was, in legal contemplation, a trust for the children of the marriage and that the plaintiff had no such status as would warrant maintaining this action.
Compiled Statutes of the State of Nebraska, 42-313, etseq., concerning divorce, alimony, maintenance and support, provide in part as follows:
"42-318. Upon every divorce from the bonds of matrimony for any cause excepting that of adultery committed by the wife, and also upon every divorce from bed and board, from any cause, if the estate and effects restored or awarded to the wife shall be insufficient for the suitable support and maintenance of herself and such children of the marriage as shall be committed to her care and custody, the court may further decree to her such partof the personal estate of the husband and such alimony out of hisestate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and all other circumstances of the case."
"42-319. All judgments and orders for payment of alimony or of maintenance in actions of divorce or maintenance shall be liens upon property in like manner as in other actions, and may in the same manner be enforced and collected by executions and proceedings in aid thereof, or other action or process as other judgments." *Page 464 
"42-323. In all cases where alimony or other allowance shall be decreed for the wife or for the children; the court may require sufficient security to be given by the husband for the payment thereof, according to the terms of the decree."
In compliance with the provisions of the statute, Thomas Stretch and Verna G. Stretch entered into a property settlement, filed February 22, 1941, in the District Court of Cheyenne County, Nebraska, which reads in part as follows:
"That the said Thomas M. Stretch will pay unto the Clerk of the District Court of Cheyenne County, Nebraska, in his official capacity, the sum of $3000.00, to be paid to the said Verna Stretch to be held in trust by her and used when necessary for the care and support of Mary Ellen Stretch and Thomas Stretch, minor children of the parties, in the following manner: $20.00 per month beginning with the first day of April 1941, and $20.00 on the first of each month thereafter so long as the said Verna Stretch shall have the legal control and custody over said minor children; provided, that in the event the said Verna Stretch shall notify said Clerk of the District Court of said Cheyenne County that it does not require, for the support of said minor children, the sum of $20.00 per month, then said Clerk of the said District Court shall pay to the said Verna Stretch such an amount less than $20.00 per month as she may direct; provided further, that when either of said children shall attain the age of sixteen years then the said Clerk of the District Court is authorized to pay an amount in excess of $20.00 per month, but not to exceed $40.00 per month, upon request of the said Verna Stretch, for the support of said minor children, or the survivor of either of them."
"It is further agreed that all of the written documents of every kind and nature, as hereinbefore described, shall be executed by each party as the case may be and shall be placed in escrow with R.P. Kepler of Sidney, Nebraska, to be delivered to the respective parties to whom they belong if and when the divorce referred to herein shall be granted, but in the event such divorce is not granted, then they are to be either destroyed and held for naught, or returned to the maker of such instrument."
It was clearly the intent of the parties at the time of the entry of the decree above referred to that the $3,000 should be for the support and maintenance of the minor children, Mary Ellen Stretch and Thomas Stretch, Jr.
The application of plaintiff and Verna G. Stretch for the return of the money deposited in the District Court of Nebraska reads in part as follows: *Page 465 
"The applicants herein further state to the Court that it is the desire of both parties to gain and have restored to them their former relationship of husband and wife, to the end that they may more efficiently care for, rear, and educate their two minor children, Mary Ellen Stretch, a daughter, and Thomas Stretch, Jr., a son, and that the marriage status of the parties, heretofore existing, be restored to them and the Trust Fund,
now in the hands of the Clerk of the District Court of Cheyenne County, Nebraska, released to both parties jointly."
As a result of the vacation of the decree, the $3,000 was returned jointly to plaintiff and Verna G. Stretch. However, it is to be noted that the $500 and the Studebaker automobile transferred by the plaintiff to Verna G. Stretch as a result of the property settlement remain vested in her, and that the proceeds of the sale of the ranch and title to the Lodgepole house remained vested in the plaintiff. The parties were not placed in statu quo ante. The sole change resulting from a vacation of the divorce decree was the release of the $3,000. Upon the vacation of the decree aforesaid and the return of these funds to the plaintiff and Verna G. Stretch, the identical funds were used, together with some smaller additional sum, for the purchase of the property here involved.
I am satisfied from the testimony of Mrs. Stretch that the plaintiff suggested that the decree in the divorce action of 1941 should be vacated in order that the $3,000 could be used to obtain a home for the children. The abandoning of the action for divorce did not connote a reconciliation of the plaintiff and his wife. It was for the sole purpose of obtaining funds with which to purchase the farm in New Jersey. The plaintiff, at the time of the purchase, was insistent that title should be taken in the name of Verna G. Stretch solely, and that he wanted nothing to do with it. It was only upon her insistence that title be taken in both names that the conveyance was eventually made in this form. In this she was motivated by an idea that the children would be protected in the event either she or the plaintiff died.
The testimony of Robert R. Crook and Katherine G. Crook, from whom Mrs. Stretch purchased the house in Bridgeton, casts further light upon plaintiff's then frame of mind. From *Page 466 
their testimony it appears that plaintiff expressed his entire satisfaction with the arrangements as made, including approval of title being taken in the name of Verna G. Stretch as trustee for Mary Ellen and Thomas, Jr. These conversations both preceded and succeeded the purchase of the Bridgeton property. Only after plaintiff had obtained his final decree of divorce in Nebraska, and the title to the Bridgeton property was lost did he see fit to complain.
Although ineptly and inartistically expressed, the purpose of obtaining the $3,000 deposited with the Nebraska court, as gathered from the manner in which the transaction was handled, the conduct of the plaintiff and Verna G. Stretch and the several conversations recited in the testimony, was to obtain title to the Shiloh property in trust for the children.
The original deposit of the $3,000 with the Clerk of the District Court of Cheyenne County, Nebraska, created a trust of which the children were the cestuis for the period of their lives or until they attained the age of 21 years. Although thecorpus of this fund was deposited with the aforesaid Clerk in a trust capacity, Verna G. Stretch was as well designated a trustee and the individual monthly payments were paid to her in such capacity.
Plaintiff conducted all of the negotiations for the purchase and the transfer of the Shiloh property. His wife and children were unskilled in matters pertaining to the acquisition of real estate. He was in a position of trust and confidence, so far as his wife and children were concerned.
There is no doubt that because of the provisions of R.S.
25:1-3 the agreement for the creation of an express trust must fail.
However, there are facts here present which give rise to a constructive trust, which is expressly excluded from the operation of the cited statute (R.S. 25:1-3). See alsoEastmond v. Eastmond, 2 N.J. Super. 529, 64 A.2d 901. Equity will not suffer the use of the Statute of Frauds as an instrument of fraud. It operates upon the conscience of the party to prevent undue and unconscionable advantage. A constructive trust is not grounded in the intention of the *Page 467 
parties, inferred or presumed; it is a remedial device of equity; a trust in invitum — to prevent unjust enrichment. Moses v.Moses, 140 N.J. Eq. 575, 53 A.2d 805; Miske v. Habay,1 N.J. 368, 63 A.2d 883.
A constructive trust may arise where there is a fiduciary relationship. Scott on Trusts, Vol. 3, § 499, p. 2413 etseq., states this rule as follows:
"The simplest situation arises where the fiduciary is under an affirmative duty to purchase the property for the beneficiary, and he not only fails to purchase it for the beneficiary but purchases it for himself. The result is the same, however, even though the fiduciary would not incur a liability to the benelciary for his failure to purchase the property. It is sufficient that he is under a duty if he purchases it at all to purchase it for the beneficiary. In such a case if he purchases the property for himself, he is chargeable as constructive trustee of the property for the beneficiary, and can be compelled to surrender it to him, on being reimbursed the amount of the purchase price."
"A constructive trust may be imposed where there is an existing fiduciary relationship and the fiduciary undertakes to purchase property for the beneficiary and in violation of his undertaking purchases the property for himself. This is so even though it was not originally a part of his duty as fiduciary to purchase the property."
"So too a constructive trust will arise where there is a confidential relation arising out of a family connection or otherwise. It is easy to impose a constructive trust in these cases, since the fiduciary or confidential relation existed prior to the undertaking by the fiduciary to purchase the property."
See also Wakeman v. Dodd, 27 N.J. Eq. 564; Rogers v.Cenung, 76 N.J. Eq. 306, 309, 74 A. 473; Abramson v.Davis, 100 N.J. Eq. 563, 135 A. 774; First Federal Savingsand Loan Ass'n v. Shaw, 142 N.J. Eq. 585, 56 A.2d 897;Restatement of the Law — Restitution, p. 795.
The plaintiff here undertook to purchase the Shiloh property with trust funds of which his wife was trustee and in which his children had a beneficial interest, obtaining by his representations what was tantamount to a release from his wife. As above adverted to, the negotiations for purchase were exclusively conducted by plaintiff. There can be no doubt that the plaintiff occupied a fiduciary relationship to his wife and children in this transaction. He held a confidential *Page 468 
association because of the trust and confidence imposed in him and the express agreement to use the trust funds for the purchase of the Shiloh property for the children. For an interesting similar case, see Barker v. Barker, 27 N.W.2d 576. I am satisfied that this was the intent of both plaintiff and his wife. Only as an afterthought is he now advancing his claim.
In view of the foregoing, it is here held that a constructive trust arose in the Shiloh property and the plaintiff cannot maintain this suit for his individual benefit.
The second, third and fourth defenses of the Halters concern themselves with estoppel, waiver and laches. For the sake of brevity, all three may here be considered together.
If the foregoing conclusion that plaintiff had no equitable interest in the property which would permit him to sue in his individual capacity were ignored, he would still be barred by reason of his conduct. I am satisfied from the testimony that plaintiff knew in January of 1943 of the contemplated sale by his wife. This the plaintiff first admitted under cross-examination. Subsequently, however, he testified that it was not in January of 1943 but that it was either in February or March of 1943, immediately prior to the time of his father's death. Even if he were granted the benefit of his latter testimony, and for the sake of argument the date of notice were set at March of 1943, the conclusions hereafter arrived at would not be changed. I am also satisfied that he had the conversations with the Crooks as recited by them both directly prior to and shortly after the purchase of the Bridgeton property.
In August of 1943, in his third petition for divorce, filed in Nebraska, under oath he made the following statements:
"that the plaintiff at the request of this defendant purchased a tract of land in New Jersey, and the defendant lived on this land until sometime in the year 1942, when she in some manner unknown to this plaintiff disposed of the land and moved to town, where she is now living, in the State of New Jersey; that the profits of the sale of said land, by the defendant, has all been retained by the defendant and this plaintiff has received none of it, which he is advised and believes is in the sum of $4,000.00; that the defendant through her *Page 469 
acts has used, for living expenses and for the purpose of this land and other expenditures, and wholly depleted the property of any kind this plaintiff once had, and that he now owns no property of any kind or nature, except a small property in Lodgepole, Nebraska of very little value."
"that this plaintiff will contribute to the support of said children such amount as he is able to contribute."
From the foregoing cited statutes of the State of Nebraska, the motive for making such statements is apparent. He was anticipating the permissive authority of the court to further inquire into the financial status of the parties to ascertain what support should be ordered for the children of this marriage.
In addition, as appears from the stipulation, the allegation in the petition concerning his assets, although not required by the Nebraska statute or rule, is a tactic of the pleader, serving to permit him to adduce testimony as to his financial ability to contribute to the support of his children. The plain intent of the plaintiff herein was a desire to avoid an order in Nebraska which would subject him to the payment of such support.
In the Nebraska suit, where Verna G. Stretch was a defendant, the allegation concerning the real estate sub judice was a material one. As a result, plaintiff was not obliged to furnish any support for either his wife or his children. This support fell upon her. He now comes to this court, having denied that he had any interest in the property for which $4,000 was paid and seeks to recover a one-half interest in the same. It is evident from the counterclaims that if he does so succeed, Verna G. Stretch may be subjected to a judgment for a sum in excess of $2,000. The plaintiff having condoned the sale in one suit in order to avoid liability for the support of his children, should surely not now be heard to complain after having received the indirect benefit of such condonation.
A party will not be permitted to play fast and loose with the courts, nor to assume a position in one court entirely different from and inconsistent with that taken by him in another court or proceeding with reference to the very same matter or thing. A party may take alternate positions *Page 470 
as to certain matters or things but not inconsistent ones with reference to the very same identical matter or thing. Cleaves v.Yeskel, 104 N.J.L. 497, 141 A. 814; In re Allison'sEstate, 106 N.J. Eq. 55, 150 A. 52; Id., 107 N.J. Eq. 197, 152 A. 6; In re Walsh's Estate, 80 N.J. Eq. 565, 74 A. 563.
"The rule that a party will not be allowed to maintain inconsistent positions is applied in respect of positions in judicial proceedings. As thus applied it may be regarded not strictly as a question of estoppel, but as a matter in the nature of a positive rule of procedure based on manifest justice and, to a greater or less degree, on considerations of orderliness, regularity, and expedition in litigation. * * * The principle requiring consistency in judicial proceedings is, however, customarily considered a form of equitable estoppel." 19 Amer.Jur., § 72, p. 704 et seq.
See also 31 C.J.S., Estoppel, § 117, p. 372; 21 C.J., § 227, p. 1223 et seq.
His actions in the Nebraska court in recognizing and acquiescing in the conduct of his wife in disposing of the Shiloh property are sufficient to now estop him from assuming the inconsistent position of now disputing or contesting such disposition.
At no time prior to the actual filing of suit did he apprise either of the Halters of the fact that he had a claim against the property purchased by them from his wife, nor that he contested their title. Almost three years elapsed between his knowledge of the questioned conveyance to them and the initiation of any action. There has been an unreasonable delay by the plaintiff in asserting his rights. In the meantime, the Halters, who had no knowledge of a dispute about the title, have incurred considerable expense for repairs and improvements, and have changed their position. For this reason, plaintiff will also be barred. Montclair Trust Co. v. Star Co., 139 N.J. Eq. 211,50 A.2d 481; affirmed. 141 N.J. Eq. 263, 57 A.2d 7; Francov. De Voursney, 2 N.J. Super. 359, 63 A.2d 900.
Some argument has been made that counsel for the Halters, who represented them at the time of the final settlement and closing for the purchase of the property in question, had *Page 471 
knowledge of the alteration in the deed, obtained prior to his being retained as their counsel. It appears that the same lawyer had represented Verna G. Stretch at the time of the alteration of the deed. It is contended that because he had knowledge of the fact that the deed had been so altered that such knowledge is imputed to the Halters.
There has been no finding that counsel had any such knowledge. But assuming, for the sake of argument, that he had obtained such knowledge prior to the time he represented the Halters, such knowledge would not be imputed to them. Notice must come to an agent while he is concerned for a principal and in the course of the same transaction. If he have notice only by some other transaction, foreign to the business at hand, this will not affect the principal. Centreville B. L. Assn. v. Gollin,117 N.J. Eq. 412, 176 A. 356; Continental Purchasing Co. v.Norelli, 135 N.J.L. 93, 48 A.2d 816.
I find as a fact that the Halters did not have any actual notice of the alteration, nor that any knowledge of Gallner is imputable to them.
The complaint will be dismissed.
In view of the foregoing, it is unnecessary to consider the counterclaims. *Page 472