838 So.2d 1290 (2003)
Mary Anna RIVET, Minna Ree Winer, Edmond G. Miranne, and Edmond G. Miranne, Jr.,
v.
REGIONS BANK, Walter L. Brown, Jr., Perry S. Brown, and Fountainbleau Storage Associates.
No. 2002-CC-1813.
Supreme Court of Louisiana.
February 25, 2003.
*1291 Sidney A. Cotlar, Russ M. Herman, Herman, Herman, Katz Cotlar, New Orleans; Charles L. Stern, Jr., Steeg & O'Connor, New Orleans, for applicant.
Salvador Anzelmo, New Orleans, Stuart E. DesRoches, Michael J. Laughlin, John G. Odom, Shreveport, for respondent.
TRAYLOR, Justice.
We granted certiorari in this matter to consider whether an action for the nullity of a default judgment may be brought by the use of summary proceedings. For the reasons which follow, we answer that question in the affirmative, reverse the court of appeal, and reinstate the judgment of the trial court.

FACTS and PROCEDURAL HISTORY
This matter arises from a series of property transactions which began over thirty-five years ago.[1] In 1957, Lois Stern Brown, the predecessor in interest of Walter L. Brown, Jr., and Perry S. Brown (the Browns), executed a lease in favor of the Pelican State Hotel Corporation. Subsequently, on September 15, 1983, Tulane Hotel Investors Limited Partnership (THILP), the plaintiffs' (the Mirannes[2]) investment vehicle, acquired a leasehold interest in the property. On that same day, THILP granted a first mortgage on the lease-hold to First Financial Bank (FFB), formerly controlled by the Mirannes, in order to secure a $15,000,000 collateral mortgage note pledged to the bank. On May 2, 1984, THILP granted to the plaintiffs (the Mirannes) a second collateral mortgage which was not recorded in the public records until August 17, 1984.
THILP defaulted on its FFB loan causing the bank to attempt to enforce its mortgage on the leasehold estate. On October 5, 1984, THILP filed for protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana. After converting the proceeding to a Chapter 7 liquidation, the bankruptcy court ordered the sale of the leasehold estate at public auction, free and clear of all liens and mortgages, including specifically the Mirannes' collateral mortgage.
The leasehold was sold at auction to FFB for the minimum bid of $5,250,000, and on August 14, 1986, the bankruptcy court approved the sale free and clear of all encumbrances. On December 29, 1993, Secor Bank, successor to FFB, purchased the property and thus terminated the 1957 lease as a matter of law by confusion. Immediately following the purchase, Secor sold the property to Fountainbleau Storage Associates (FSA), the current owner of the property.
One year later, on December 29, 1994, the Mirannes filed a "Suit to Enforce Mortgage Via Ordinaria or Alternatively for Damages" in Civil District Court against Regions Bank (Secor's successor), the Browns, and FSA. On February 3, 1995, defendants removed the case to federal court. FSA filed an answer in federal district court on February 7, 1995, and the Browns filed their answer on February 14, 1995.[3] The district court granted Regions' *1292 motion for summary judgment and this decision was affirmed by the court of appeals.[4] On February 24, 1998, the United States Supreme Court reversed and remanded the matter to state court for lack of subject matter jurisdiction.[5] The clerk of the federal district court apparently forwarded only the order of remand to Civil District Court and did not include the answers filed in federal court by the Browns and FSA. On August 7, 1998, Regions, the Browns, and FSA filed an action in federal court under the All Writs Act, 28 U.S.C. § 1651, and the relitigation exception to the Anti-Injunction Act, 28 U.S.C. § 2283, seeking preliminary and permanent injunctions against further proceedings in state court.
While the injunction action was ongoing in federal court, the Mirannes filed a motion for summary judgment against Regions. Three days later, on October 30, 1998, the Mirannes filed for preliminary defaults against the Browns and FSA, basing the defaults upon the fact that the Browns' and FSA's answers were not filed in the state court records. On November 4, 1998, a default confirmation hearing was held in Civil District Court. Documents filed in support of the default judgments failed to mention that the Browns and FSA had filed answers while the matter was in federal court, stating instead simply that no answer had been filed in state court. Neither was the court informed that the U.S. Bankruptcy Court had ordered the Mirannes' collateral mortgage canceled in 1986. In fact, Edmond G. Miranne, Jr., testified at the default confirmation hearing that the collateral mortgage was still effective and enforceable on the date of the hearing. At the conclusion of the hearing, the court confirmed the default judgments against the Browns and FSA. The judgments each awarded $4,688,919.10 to the Mirannes, and recognized the collateral mortgage which the bankruptcy court had ordered canceled.
On January 26, 1999, the federal district court entered a preliminary injunction which stayed further state court proceedings in the matter. Regions then filed a motion for summary judgment to permanently enjoin the Mirannes from relitigating issues related to the collateral mortgage which the bankruptcy court had already decided. The Browns and FSA also filed a motion for summary judgment asking that the Mirannes be permanently enjoined from prosecuting the state law suit, from enforcing the default judgments, and from initiating another action against them based upon the collateral mortgage.
On April 13, 1999, the federal district court permanently enjoined the Mirannes from relitigating in state court issues and claims related to the collateral mortgage which had been decided by the bankruptcy court, and further permanently enjoined the Mirannes from enforcing the default judgments entered in state court against the Browns and FSA. The U.S. Fifth Circuit Court of Appeals, on August 22, 2000, affirmed the district court's judgment with relation to the permanent injunction barring the relitigation of the validity of the collateral mortgage, but reversed the judgment with relation to the injunction barring the enforcement of the default judgments for reasons of comity and federalism.
In January 1999, while the federal injunction action was pending, the Browns and FSA had filed nullity actions in state court, alleging that the default judgments *1293 were both relative and absolute nullities. No further action was taken in state court during the pendency of the federal injunction action. Following the court of appeals' decision, the Browns and FSA filed motions to vacate the default judgments, arguing that the judgments were absolute nullities, and as such could be attacked by means of motion; and that because the judgments did not resolve all issues against all parties, the default judgments were not final judgments, and thus could be vacated by the trial court. The Mirannes, on their part, filed an exception to unauthorized use of summary process to vacate the judgments. In a judgment dated Octobaer 29, 2001, the trial court overruled the Mirannes' exception to unauthorized use of summary process and vacated the default judgments. In her oral reasons for judgment, the trial court indicated that the default judgments were interlocutory based upon Article 1915(B) of the Code of Civil Procedure as it read at the time the default judgments were taken, and, as interlocutory judgments, could be attacked by motion rather than by ordinary process. She further reasoned that she vacated the default judgments because the Mirannes did not advise the court that the Browns and FSA had filed answers in federal court at the time the defaults were confirmed.
The Mirannes then sought review of the trial court's judgment granting the motion to vacate the default judgments. In a plurality decision, the court of appeal reversed the trial court and maintained the Mirannes' exception of improper use of summary process. In the appellate opinion, two judges found that the default judgments were relative nullities which could not be attacked via summary process, one judge concurred because neither absolute nor relative nullities could be attacked by motion, and two judges dissented because the default judgments were absolute nullities which could be attacked by summary means.

DISCUSSION
Defendants argue that the default judgments granted by the trial court in this case are absolute nullities which may be attacked at any time, in any court, and by either summary or ordinary process. We agree.
A final judgment may be annulled for either vices of form or substance. C.C.P. art.2001. Judgments suffering from vices of form are called "absolute nullities," while those which contain vices of substance are called "relative nullities." A default judgment confirmed against one whom a valid preliminary default has not been taken is an absolute nullity. C.C.P. art.2002. Absolute nullities may be attacked collaterally, at any time, by rule, or any other method. C.C.P. art.2002, e.g. Hebert v. Hebert, 96-2155 (La.App. 1st Cir.9/19/97); 700 So.2d 958. A valid preliminary default may not be taken against one who has filed an answer in the matter. C.C.P. art. 1701. Our laws pertaining to default judgments are designed to provide a method for plaintiffs to obtain the relief to which they may be entitled when defendants do not answer. See Russo v. Aucoin, 7 So.2d 744 (La.App. 1st Cir.1942).
Here, the action had been removed to federal court and had been hotly contested there for over three years. While the matter was removed to federal court, all three defendants against whom the Mirannes have taken defaults answered timely under the Federal Rules of Civil Procedure. The matter was argued at the federal district and appellate courts, and eventually before the United States Supreme Court, before being remanded back to state court for lack of subject matter jurisdiction.
*1294 When a remand to the state court is based on want of jurisdiction on the part of the federal court, it is for the state court to determine what effect, if any, will be given to pleadings filed in the federal court. Ayres v. Wiswall, 112 U.S. 187, 5 S.Ct. 90, 28 L.Ed. 693 (1884). Although this court has not previously ruled on the question of whether pleadings filed in federal court will be given effect in Louisiana state courts, the question has been answered in the affirmative on several occasions in the courts of appeal. See de Reyes, v. Marine Management & Consulting, Ltd., 544 So.2d 1259 (La.App. 4th Cir.1989); Armentor v. General Motors Corp., 399 So.2d 811 (La.App. 3rd Cir. 1981); Bolden v. Brazile, 172 So.2d 304 (La.App. 4th Cir.1965).
As it is not necessary to the disposition of this matter for us to decide whether all pleadings filed in federal court during removal and prior to remand will be given effect in our state courts, we choose to restrict our holding to the following: An answer timely filed in federal court will be given effect in Louisiana courts.
Because both the Browns and FSA had timely filed answers in the matter while in federal court and because those answers are to be given effect, the preliminary defaults taken by the Mirannes in Civil District Court are not valid. Further, because the judgments taken against the Browns and FSA were not valid, the judgments are absolute nullities and subject to attack through summary process.

DECREE
For the foregoing reasons, the ruling of the court of appeal is reversed and the judgment of the trial court is reinstated. The matter is remanded to the trial court for disposition not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] This factual history has been summarized from the factual history contained in Regions Bank of Louisiana v. Rivet, 224 F.3d 483 (5th Cir.2000). Our holding is not dependent upon this history, which is provided largely as an aid to understanding how this matter reached this court.
[2] Mary Ann Rivet is the widow of Edmond G. Miranne and Minna Ree Winer is the wife of Edmond Miranne, Jr. Ms. Winer is also THILP's president and general partner.
[3] The fact that the defendants filed answers in federal court is not disputed by the Mirannes.
[4] See Rivet v. Regions Bank of La., 108 F.3d 576 (5th Cir.1997).
[5] See Rivet v. Regions Bank of La., 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).