960 So.2d 84 (2007)
Joanna Wurtele LOWMAN
v.
Edward J. MERRICK, Jr., Frank Erwin Merrick and Noemie Garrett Merrick, II.
No. 2006 CA 0921.
Court of Appeal of Louisiana, First Circuit.
March 23, 2007.
*85 C. Jerome D'Aquila, New Roads, Joseph M. Bruno, New Orleans, Counsel for Plaintiff/Appellee Joanna Wurtele Lowman.
Terry T. Dunlevy, Baton Rouge, Counsel for Defendants/Appellants Edward J. Merrick, Jr. and Frank Erwin Merrick.
J. Tracy Mitchell, Keith Friley, Baton Rouge, Counsel for Defendant/Appellant Noemie Garrett Merrick, II.
Before: KUHN, GAIDRY, and WELCH, JJ.
KUHN, J.
This appeal addresses the validity of an option to purchase property owned by defendants-appellants, Edward J. Merrick, Jr., Frank Erwin Merrick, and Noemie Garrett Merrick, II ("Noemie II"), and whether the option was properly exercised by plaintiff-appellee, Joanna Wurtele Lowman ("Joanna").[1] The dispute between the parties arises out of the settlement of the estate of their deceased mother, Noemie Garrett Merrick ("Noemie"). After plaintiff filed suit seeking to enforce the *86 option, defendants reconvened seeking to enforce other terms of the settlement agreement. After trial of the main demand, the trial court signed a November 29, 2005 judgment decreeing that Joanna was entitled to specific performance of the option. The defendants have appealed this judgment, and we affirm.

I. PROCEDURAL AND FACTUAL BACKGROUND
The facts related to the option dispute are largely undisputed. Joanna is the daughter of Alan Wurtele and Noemie G. (Wurtele) Merrick. After Mr. Wurtele died, Noemie married Edward J. Merrick, Sr., and of this marriage, three children were born: Edward, Frank, and Noemie II.
In 1973, years after Mr. Wurtele's death, Joanna and Noemie executed an act of partition that divided the former community property held by Noemie and the late Alan Wurtele, whereby Joanna received her interest in the property of the former estate of her father. Edward J. Merrick, Merrick, Sr. died in 1992, and a judgment of possession was signed in 1993. Noemie died in 1994, and the three Merrick siblings served as joint testamentary executors of her estate.
According to Joanna, Noemie bequeathed her estate to the three Merrick children, after asking Joanna not to participate in her succession. Ultimately, Joanna filed suit seeking her "forced one-eighth" interest of Noemie's estate. During the administration of the estate to settle Joanna's claim, counsel for the respective parties signed a "Stipulation" on February 8, 1996. Thereafter, the trial court that handled the succession proceedings signed a partial judgment of possession on April 3, 1996, and a final judgment of possession on October 30, 2000.
The February 8, 1996 Stipulation was signed by Francis A. Smith, Jr., who signed in his capacity as attorney for the Merrick brothers; J. Tracy Mitchell, who signed in his capacity as attorney for Noemie II; and J. Huntington Odom, who signed in his capacity as attorney for Joanna. The settlement provided as follows, in pertinent part:
Now into Court, through their undersigned counsel, come [Edward, Frank, and Noemie II] and [Joanna], who do enter into the following stipulation:
. . .
Joanna has filed a petition to be recognized as a forced heir of the decedent and to be recognized as entitled to her legitime. . . .
In order to obviate the expense of protracted litigation and the uncertainty of result of that litigation, the parties have agreed to a settlement wherein [Joanna], the forced heir, will receive the property described in the . . . letter agreement dated January 31, 1996, between Francis A. Smith, Jr., [attorney for Merrick Brothers] . . . and J. Huntington Odom, attorney for [Joanna] . . . which letter is made a part hereof by reference, the said letter agreement being adopted by [Noemie II] as fully as if the same had been signed by her counsel.
In addition to the terms and conditions set forth in the letter agreement, the parties further agree as follows:
. . .
7. It is understood and agreed that [Joanna] reserves all rights that she now has or hereafter may acquire to make claim for all or any particular items of furniture . . . wherever the same may be located. . . .

*87 8. It is further stipulated that no party hereto shall take any item from the family home without the written consent of all three Joint Executors. This constraint shall apply until Joanna shall have obtained a Judgment of Possession placing her in possession of the family home and shall have taken physical possession of the home. Thereafter, Joanna shall be responsible for the contents of the home.
Just prior to the February 8, 1996 Stipulation, Mr. Smith sent a letter to Mr. Odom (the "January 31, 1996 letter agreement"), which provided, in pertinent part:
My clients [Merrick brothers] believe that a fair and equitable settlement with your client is in the best interests of the succession and all of its heirs and legatees. For this reason, they have offered in settlement to your client . . . said offer of settlement and agreement being as follows:
. . .
(5) Joanna would have the option of acquiring an additional 145 feet of riverbank in front of the homeplace (giving her the option of owning the full 420 feet of river frontage corresponding with the full width of the homeplace) by paying the sum of $600.00 per foot for same. In lieu of paying for said 145 additional feet as set forth above, she would have the option of exchanging the northernmost 217.5 feet of her riverbank footage (acquired by her in the prior partition with her mother) for the 145 feet in front of the homeplace, said option to be effective for a period of one (1) year from the date a final Judgment of Possession is signed in Mrs. [Noemie] Merrick's succession.
The April 3, 1996 "Partial Judgment of Possession and Judgment Reducing Excessive Donations" provided in part that Joanna was granted an option to buy the property in question:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Joanna] is further recognized, as being entitled to and she is hereby granted the option to acquire the following described property, all as set forth in the Stipulation and agreement filed into the record of this proceeding, and attached to the Petition for Possession filed herein, for the consideration set forth therein, said option to be effective for a period of one (1) year from the date a final Judgment of Possession is rendered in this succession. . . .
Thereafter, Mrs. Clover N. Drinkwater, counsel for Joanna, sent a letter on June 23, 2000, to Mr. Smith that stated:
This letter is to advise you that [Joanna] elects to exercise the option conveyed to her by letter agreement dated January 31, 1996, to purchase the 145 feet of riverbank in front of her property for the sum of $600.00 per foot. Please forward an executed deed to me for same which I will hold in escrow pending the forwarding of the consideration to you.
On October 30, 2000, the trial court signed a "Judgment of Possession," which ordered that Edward, Frank, and Noemie II were entitled to the ownership of and were sent into possession of all of Noemie's property.
By letter dated December 4, 2000, Mr. J. Tracy Mitchell, counsel for Noemie II, sent a letter to Joanna[2] inquiring about Noemie II's furnishings left in Joanna's *88 home at the time of the settlement with her. The letter stated in pertinent part:
The succession has recently been closed and my client wants to tend to the matter of the furnishings which we left under your care as fiduciary.
Please advise as to the current location of the furnishings and when they may be inspected.
While we have never been given notice of or agreed to any disposition of the furnishings, if some disposition has been made in fact, please advise in detail as to the particulars of any such disposition, and what items remain.
By letter dated March 2, 2001, Mr. Terry T. Dunlevy, counsel for the Merrick brothers, wrote a letter to Ms. Drinkwater stating, in pertinent part:
It is my understanding that [Joanna] is exercising her option to purchase the additional 140 feet of riverbank property situated in front of the home. While it may be true that the option conveyed to Joanna is not contingent on resolution of any other issues, my clients desire that Joanna account for and agree to settle the contents issue. The Stipulation dated February 8, 1996 provides that Joanna may not take any item from the family home without the written consent of all three Joint Executors. The Stipulation also provides that Joanna shall be responsible for the contents of the home.
The purpose of this letter is to formally request that Joanna account for the contents of the home as set forth in the February 8, 1996 Stipulation and the letter agreement dated January 31, 1996. Please provide the required accounting, in writing, no later than March 9, 2001.
Mr. John Wayne Jewell, counsel for Joanna, wrote a May 3, 2001 letter to Mr. Dunlevy, which read as follows, in pertinent part:
You will recall that I spoke with you . . . relative to the option granted to [Joanna]. . . . I notified you that [Joanna] desired to exercise this option. To the extent it may be deemed necessary, this will serve as formal notice thereof.
I inquired . . . whether you thought your clients would transfer title to their interests in the subject lots even though their sister [Noemie] might refuse due to her stated requirement that the contents issue be resolved first. You indicated that they probably would not make the sale contingent upon a resolution of the contents issue. . . .
I would appreciate your talking with [the Merrick brothers] and letting me know their position, as Joanna would like to proceed with the sale of at least their interests at this time.
On October 9, 2001, counsel for Joanna, Mr. Robert L. Cabes of Milling Benson Woodward L.L.P., sent a letter to Mr. Mitchell regarding the exercise of the option that provided as follows, in pertinent part:
We have been retained to represent [Joanna] in various matters, including the exercise of her option to purchase from the heirs of [Noemie] the additional frontage on False River. . . .
. . .
I would appreciate you advising me as soon as possible whether any impediment exists to concluding the transaction.
If any such impediment exists, please communicate it to me. If not, I would like to plan on a closing. Attached is a copy of the survey which was provided to me, and it being my understanding that the tracts in question are shown as Lots RP-1 and RP-2, which show a total *89 frontage of 143.06 feet. Based upon the agreements provided to me, the cash consideration would be $85,836. I would ask that you provide me with the correct address and social security number for your client and I will be happy to prepare the deed. It would be my suggestion that we prepare a deed, forward it to you for execution by your respective client and make arrangements for [Joanna] to deposit the consideration with this firm in escrow pending the closing. . . .
Mr. Cabes also sent another letter on October 9, 2001, containing the same language quoted above, to Mr. Dunlevy.
On October 25, 2001, Mr. Jeff W. Elmore of Milling Benson Woodward L.L.P., counsel for Joanna, sent a letter to Mr. Dunlevy and Mr. Mitchell in their respective capacities as attorney for the Merrick brothers and for Noemie II. The letter referenced, in pertinent part, an enclosed Act of Cash Sale conveying the property that is the subject of the option:
Upon your review, we would appreciate a prompt response as to any comments you may have and in coordinating the parties' signing of the sale. . . .
If we do not receive a response by October 31, we will have no other choice but to file a lawsuit against those not cooperating, to enforce specific performance of the agreement. . . .
On October 31, 2001, Mr. Dunlevy sent a letter to Mr. Cabes via facsimile transmission formally requesting that Joanna account for the contents of the home in writing by November 15, 2001. The letter indicated that the Merrick brothers would "have no problem with [Joanna] executing the option" if she would perform her obligation under the February 8, 1996 Stipulation and provide an accounting regarding the home contents.
Also on October 31, 2001, Joanna filed suit against Edward, Frank, and Noemie II, alleging that despite her "repeated requests and demands, defendants have, in bad faith, failed or refused to perform their obligations under the Option Agreement." Joanna prayed for specific performance of the option and damages caused by defendants' failure to perform. The defendants answered plaintiff's petition, asserting Joanna had failed to carry out her duties and obligations imposed by the partial judgment of possession and the Stipulation, thereby resulting in a failure of consideration regarding the option.
The defendants also reconvened, asserting that when Joanna took possession of the family home in 1996, she had agreed as part of the settlement to be responsible for the contents of the house, which included various pieces of furniture. In the October 30, 2000 judgment of possession, the defendants were declared to be owners of the household furniture. Defendants claimed that Joanna has refused or failed to deliver the furniture to them, and they further demanded the delivery of their respective shares of the furniture or compensation for the actual value of the home contents. Further, the Merrick brothers alleged that Joanna was responsible for an accounting of the contents of the home.
A hearing was held on September 29, 2005 that disposed of the main demand. The trial court determined a separate hearing would be needed to dispose of the reconventional demand. On November 29, 2005, the trial court signed a judgment ordering:
[O]n the main demand, there be judgment in favor of [Joanna] and against [Edward, Frank and Noemie II], decreeing that [Joanna] is entitled to specific performance of the option which is the subject of this lawsuit and accordingly, defendants are ordered to convey by Act of Cash Sale [the property] for $600.00 *90 per front foot or a total of [$85,836.00] to be paid to defendants in equal proportions, said sale to be executed by defendants immediately[.]
All defendants have appealed this final judgment.[3] Noemie II asserts the trial court erred in finding that: 1) a valid option existed; 2) the option was exercised; and 3) Joanna was entitled to specific performance regarding the option despite the failure of consideration on her part. The Merrick brothers urge the trial court erred by: 1) finding that the provision of the settlement that granted the option was independent of the provisions regarding her responsibility for the furniture; and 2) signing a judgment granting specific performance of the option because Joanna was in default when she tried to exercise her option.

II. ANALYSIS

A. Validity of the Option and Failure of Consideration/Default
Noemie II contests the validity of the option on multiple points. She asserts that the documents referencing the option either do not contain a precise definition of the property or a precise description of the consideration for which the option was granted. She also asserts the documents in question did not clearly grant an option to Joanna, and none of these documents reflect the consent of the grantors individually. We find no merit in Noemie II's contentions. While she challenges the effect of the January 31, 1996 settlement letter and the February 8, 1996 Stipulation and argues these documents did not create an option, she provides no basis for nullifying the provisions of the April 3, 1996 judgment that recognized the option in favor of Joanna. She collaterally attacks the judgment by attacking the terms of the underlying documents, but she has not sought to nullify the April 3, 1996 judgment.
A collateral attack is defined as an attempt to impeach a decree in a proceeding not instituted for the express purpose of annulling it. Salles v. Salles, 04-1449, p. 5 (La.App. 1st Cir.12/2/05), 928 So.2d 1. As the supreme court stated in Allen v. Commercial Nat. Bank, 243 La. 840, 147 So.2d 865, 868 (1962), "No principle of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio." "A judgment rendered by a Court of competent jurisdiction imparts absolute verity and has the force of things adjudged, unless and until it is set aside in a direct action of nullity. It cannot be collaterally attacked." Salles v. Salles, 04-1449, pp. 5-6. Thus, in accordance with the terms of the April 3, 1996 judgment, we find no merit in Noemie's contentions that the option was not valid.
The Merrick brothers urge the trial court erred by finding that the provision in the settlement that granted the option was independent of Joanna's obligations regarding the furniture. The Merrick brothers and Noemie II also argue that Joanna breached the terms of the settlement agreement, causing her to be in default and unable to enforce the option. We find no merit in these arguments; they are attempting to collaterally attack the April 3, 1996 judgment and to avoid the obligations imposed by the judgment. If Joanna has not complied with the judgment, the defendants can seek enforcement of Joanna's obligations pursuant to *91 the terms of the judgment. Based on the terms of the judgment, Joanna was granted an option to acquire the property at issue during a one-year period following the October 30, 2000 judgment. The terms of the judgment do not provide that Joanna's option to purchase the property was contingent upon her obligation to be responsible for the home's contents. Although the judgment references the February 8, 1996 Stipulation, its terms do not establish such a contingency, as the trial court properly concluded.

B. Exercise of the Option
The trial court concluded that Joanna timely exercised the option, and we find no error in this conclusion. The record establishes that Joanna timely exercised the option by sending numerous letters written on her behalf by attorneys who represented her during the period in question. The record also establishes that defendants' respective attorneys timely received these letters. Further, all of the parties acknowledged that the various attorneys acted on behalf of their respective clients; no one claimed that any of the attorneys exceeded their authority to act in the representation of their respective clients. The trial court reasoned, "For the defendants to now claim that the plaintiff did not validly exercise the option by mailing notice of the same to their counsel is disingenuous." We agree.
Noemie II argues there is no written mandate authorizing the actions of Joanna's attorney to exercise the option on her behalf. Noemie II also complains that she did not receive direct notice regarding the exercise of the option from Joanna.
An option to buy is a contract whereby a party gives to another the right to accept an offer to sell a thing within a stipulated time. La. C.C. art. 2620. The acceptance of an offer contained in an option is effective when received by the grantor; upon such an acceptance, the parties are bound by a contract to sell. La. C.C. art. 2621. Generally, a sale or promise of sale of an immovable must be made by authentic act or by act under private signature. La. C.C. art. 1839 and 2440. When the law prescribes a certain form for an act, a mandate authorizing the act must be in that form. La. C.C. art. 2993. Thus, in the sale of immovable property, written authority is required for an agent to execute either an agreement to sell or a contract of sale. Tedesco v. Gentry Development, Inc., 540 So.2d 960, 964 (La.1989).
We recognize that the attorneys in their representative capacities could not execute an act of sale on their respective clients' behalf, but based on the particular facts of this case, we conclude that Joanna's attorney was authorized to provide the mere notice that she was accepting Noemie II's offer to sell.[4] Joanna and Noemie II authorized their respective attorneys to act for them in settling their mother's succession. That settlement involved the granting of the option to Joanna, and in conformity with the Stipulation and the partial judgment of possession, Joanna timely exercised her option by having her attorney notify the same attorney who had negotiated the settlement on Noemie II's behalf, J. Tracy Mitchell, who also represented Noemie II in matters pertaining to Noemie's succession dating back to 1995. Based on these particular facts, we conclude that Noemie II is judicially estopped from asserting that Mr. Mitchell was not authorized to act on her behalf *92 with regard to the particular property in question. The doctrine of judicial estoppel prohibits parties from deliberately changing positions according to the exigencies of the moment. The doctrine is intended to prevent the perversion of the judicial process and prevents "playing `fast and loose with the courts.'" New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 1814-1815, 149 L.Ed.2d 968 (2001) (quoting Stretch v. Watson, 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949), rev'd in part, 5 N.J. 268, 74 A.2d 597 (1950)). Judicial estoppel "is an equitable doctrine invoked by a court within its sound discretion." New Hampshire v. Maine, 532 U.S. at 750, 121 S.Ct. at 1815.
Further, based on the facts presented herein, we find that Joanna's attorney, pursuant to his representative capacity, was entitled to enforce the terms of the Stipulation and the judgment of possession on her behalf. Additionally, neither the judgment granting the option nor the letter agreement that initially recognized the option in Joanna's favor specified that notice of the exercise of the option had to be provided by Joanna rather than her attorney or that her acceptance of the offer to sell could not be communicated to the attorneys for the defendants.
"[A]cceptance by the grantee of the offer contained in an option turns the option into a contract to sell, regardless of whether the object of the option involves movables or immovables." Comment (b) to La. C.C. art. 2621. A contract to sell gives either party the right to demand specific performance. La. C.C. art. 2623. See also La. C.C. art.1986, which permits the granting of specific performance and damages when an obligor fails to perform an obligation to execute an instrument. Accordingly, the trial court properly concluded that Joanna was entitled to specific performance of the contract to sell.

III. CONCLUSION
For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against defendants-appellants.
AFFIRMED.
NOTES
[1] The property in question is described, in pertinent part, as "Two (2) certain lots or parcel of ground situated in Section 97, T-5-S, R-10-E, Southeastern Land District of Louisiana West of the Mississippi River, Pointe Coupee Parish, Louisiana, and described as LOTS RP-1 and RP-2. . . ."
[2] Mr. Mitchell's letter also inquired as to whether Joanna was represented by counsel and indicated that if she were represented, he would correspond with her counsel.
[3] When principal and incidental demands are tried separately, a judgment on the principal demand is a final judgment. La. C.C.P. art. 1915 A(4).
[4] The Merrick brothers do not challenge Joanna's method of acceptance of the offer. They simply assert that she was not entitled to exercise the option because she was in default at the expiration of the option term.