NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-904

K.P.W.

VERSUS

M.P., ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 108644-G
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and
James T. Genovese, Judges.

GENOVESE, J., CONCURS IN THE RESULT.

AFFIRMED.

K.P.W.
In Proper Person
2575 Gardere Lane, Lot 83
Baton Rouge, LA 70820
Telephone: (225) 766-8901
COUNSEL FOR:
    Plaintiff/Appellant - K.P.W.

M.P. and C.P.
In Proper Person
102 Crofton Street
New Iberia, LA 70560
COUNSEL FOR:
    Defendants/Appellees - M.P. and C.P.

**THIBODEAUX, Chief Judge.**

Plaintiff-appellant, K.P.W.[1], appeals the trial court's judgment that dismissed her pro se Petition for Custody, Annulment of Adoption of her minor daughter, L.P. She asserts that the natural father was not provided with adequate notice of the adoption proceedings and did not provide his consent to the adoption. K.P.W. contends that the trial court committed error when it failed to enter a default judgment against the defendants-appellees, M.P. and C.P., for failing to file responsive pleadings. In addition, she asserts that the trial judge erred when he failed to recuse himself after realizing that he represented one of the defendants-appellees, M.P., prior to becoming a judge. For the following reasons, the judgment of the trial court is affirmed.

I.

**ISSUES**

1. Did the trial court err by failing to enter a default judgment against the defendants-appellees for failing to timely file a responsive pleading to plaintiff-appellant's petition?

2. Was it error for the trial judge to fail to recuse himself from this case because he provided legal representation for defendant-appellee, M.P., during his past career in private practice?

3. Did the plaintiff-appellant establish that the adoption should be nullified due to lack of proper notice to the natural father or due to his failure to provide his consent to the adoption?

---

[1] Pursuant to Rule 5-2 of the Uniform Rules-Courts of Appeal, initials are being used to ensure the confidentiality of the minor that is the subject of the proceeding.

## II.

## **FACTUAL BACKGROUND**

K.P.W. gave birth to L.P. in 1995. At the time, K.P.W. was unwed, nineteen years old, and living with her parents, defendants-appellees, M.P. and C.P. The child's father, C.F., was eighteen years old. K.P.W. and her child lived with and were financially supported by her parents for approximately three years after L.P.'s birth.

In 1998, when L.P. was three years old, M.P. and C.P. petitioned to adopt L.P., asserting that they could provide better financial support for her, a better living environment, and better stability than the natural parents. Prior to the filing of the petition for adoption, L.P.'s father, who was then incarcerated at the Hunt Correctional Center, was notified via certified mail of the maternal grandparents' intent to petition for L.P.'s adoption. The adoption petition that was subsequently filed states that no response was received from him. K.P.W. signed an authentic act of consent to the adoption. A Final Decree and Judgment granting the adoption was rendered on September 23, 1998.

K.P.W. moved out of her parents' home that year. She claims to have since become financially independent after having received financial assistance from her parents for only a few months. K.P.W. eventually gave birth to three other children and married their father in 2005. She has maintained physical contact with her parents and her daughter, L.P., over this time.

On November 2, 2006, K.P.W. filed, in proper person, a Petition for Custody for L.P., who was, by then, eleven years old. The pleading was later amended to reflect that it was a Petition for Custody, Annulment of Adoption. K.P.W. alleged that the adoption should be annulled because she surrendered custody

2

of L.P. to her parents under duress. She asserts that the duress was due to the repeated pressure M.P. and C.P. placed on her to consent to the adoption, using threats, harassment, and manipulation. K.P.W. alleges that her parents convinced her that if she allowed the adoption to occur, then it would benefit L.P. financially because she would then be able to qualify for certain monetary government benefits. Also, she claims that her parents promised her that she would be able to regain custody of her daughter once she "got on her feet," although they have not kept their promise. This lawsuit followed.

M.P. and C.P. did not file responsive pleadings. At the hearing on this matter, both parties appeared in proper person, unrepresented by counsel. Present in court with K.P.W. was her husband, K.W., the father of her three additional children, ages four, three, and two. M.P. and C.P. were both present. The court allowed testimony to be presented by the parties. At the beginning of the proceeding, shortly after the start of K.P.W.'s testimony, the trial judge interrupted K.P.W. and stated that he recognized the defendant, M.P., as a former client of his. He asked K.P.W. if she had a problem with him deciding the case because of that fact. After asking whether he could be fair, to which the judge responded in the affirmative, K.P.W. stated that she did not have a problem with him presiding over the matter. This issue was not raised again during the proceedings.

After allowing the parties to testify and question each other regarding the issues presented by K.P.W.'s Petition for Custody, Annulment of Adoption, the trial court orally reasoned that the testimony and evidence showed that K.P.W. signed an authentic form to consent to the adoption even though the evidence showed that she had expressed reluctance and had changed her decision to give consent to the adoption on a few occasions. The court stated that it recognized that it apparently

was not easy for K.P.W. to consent to the adoption; however, the court found that K.P.W. received counseling prior to the adoption, that the adoption was performed legally, and had been carried out with due process. The court issued a judgment in accordance with these rulings and dismissed K.P.W.'s Petition for Custody, Annulment of Adoption. It is from this judgment that K.P.W. has appealed.

III.

## LAW AND DISCUSSION

*Failure of Defendants to File Responsive Pleadings*

K.P.W. contends that the trial court manifestly erred because it did not require the defendants-appellees to timely file an answer to her Petition for Custody, Annulment of Adoption. She contends that she notified the trial court that the defendants-appellees "were in default" pursuant to La.Code Civ.P. art. 1701, but that the trial court failed to act.

Louisiana Code of Civil Procedure Article 1701(A), cited by the plaintiff-appellant, governs the procedure for obtaining a preliminary default judgment against a defendant who does not timely file an answer to a suit:

**Art. 1701. Judgment by default**

A. If a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him. The judgment may be obtained by oral motion in open court or by written motion mailed to the court, either of which shall be entered in the minutes of the court, but the judgment shall consist merely of an entry in the minutes.

"Our laws pertaining to default judgments are designed to provide a method for plaintiffs to obtain the relief to which they may be entitled when defendants *do not answer*." *Rivet v. Regions Bank*, 02-1813, p. 6 (La. 2/25/03), 838 So.2d 1290, 1293 (citing *Russo v. Aucoin*, 7 So.2d 744 (La.App. 1 Cir.1942)). However, there is a two-

4

step process that must be undertaken to obtain a default judgment. Obtaining a preliminary default judgment is the first step in the process, and it is gained by proving that the defaulting party received either personal or domiciliary service of the citation and petition and that he or she failed to file responsive pleadings prior to the expiration of the relevant time delays allowed for doing so. *See Clay v. Clay*, 389 So.2d 31 (La.1979). Once the preliminary default judgment is entered based upon this proof, it must be confirmed via a motion to the court pursuant to La.Code Civ.P. art. 1702.[2]

We find that K.P.W.'s allegation that the defendants-appellants did not file any pleadings in response to her original or amended petition is supported by the record. However, the record does not contain any evidence that K.P.W., either orally or in writing, moved to have a preliminary default judgment entered against M.P. and C.P. as a result. Nor does the record contain proof that K.P.W. ever made a showing of entitlement to a preliminary default. For these reasons, K.P.W.'s assertion is untenable.

---

[2]Article 1702 states, in relevant part:

**Art. 1702. Confirmation of default judgment**

A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default. When a judgment of default has been entered against a party that is in default after having made an appearance of record in the case, notice of the date of the entry of the judgment of default must be sent by certified mail by the party obtaining the judgment of default to counsel of record for the party in default, or if there is no counsel of record, to the party in default, at least seven days, exclusive of holidays, before confirmation of the judgment of default.

B. (1) When a demand is based upon a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.

*Trial Judge's Past Representation of Defendant*

The plaintiff, K.P.W., alleges on appeal that the trial judge should not have presided over the case after determining that he represented the defendant, M.P., in an unrelated matter in the past. Consequently, the issue presented is whether the trial judge should have been recused from the matter based on the circumstances of this case.

We find that K.P.W. consented to the trial judge continuing to preside over the matter to conclusion, without objection, after the trial judge recognized M.P. during the hearing and immediately disclosed his prior professional relationship with M.P. K.P.W.'s failure to object and/or move to have the judge recused prior to the finality of the trial proceedings[3] constitutes a waiver of her right to complain on appeal. The judge had the right to continue to preside over the matter with full authority in the absence of his self-recusal or the filing of a motion for his recusation.[4]

Assuming arguendo that K.P.W. has a valid issue for appeal, we do not find that the mere existence of this prior professional relationship with one of the

_____

[3]Louisiana Code of Civil Procedure Article 154 provides:

**Art. 154.  Procedure for recusation**

> A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.

[4]Louisiana Code of Civil Procedure Article 153 provides:

**Art. 153.  Judge may act until recused or motion for recusation filed**

> Until a judge has recused himself, or a motion for his recusation has been filed, he has full power and authority to act in the cause.

defendants is sufficient cause, without more, to establish the necessary recusal of this judge. *See, Guidry v. First Nat'l Bank of Commerce,* 98-2383 (La.App. 4 Cir. 3/1/00), 755 So.2d 1033, *writ denied,* 00-920 (La. 5/26/00), 762 So.2d 1106. Louisiana Code of Civil Procedure Article 151 provides the exclusive grounds for the recusal of judges and provides:

**Art. 151.  Grounds**

A.  A judge of any court, trial or appellate, shall be recused when he is a witness in the cause.

B.  A judge of any court, trial or appellate, may be recused when he:

(1) Has been employed or consulted as an attorney in the cause, or has been associated with an attorney during the latter's employment in the cause;

(2) At the time of the hearing of any contested issue in the cause, has continued to employ, to represent him personally, the attorney actually handling the cause (not just a member of that attorney's firm), and in this case the employment shall be disclosed to each party in the cause;

(3) Has performed a judicial act in the cause in another court;

(4) Is the spouse of a party, or of an attorney employed in the cause; or is related to a party, or to the spouse of a party, within the fourth degree; or is related to an attorney employed in the cause; or to the spouse of the attorney, within the second degree; or

(5) Is biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings.

C.  In any cause in which the state, or a political subdivision thereof, or a religious body or corporation is interested, the fact that the judge is a citizen of the state or a resident of the political subdivision, or pays taxes thereto, or is a member of the religious body or corporation, is not a ground for recusation.

Based on the facts asserted as the basis for recusal by the plaintiff, we find that La.Code Civ.P. art. 151(B)(5) would be the only section that could possibly serve as a basis for recusal. Considering this, we do not find that K.P.W. asserted any facts that would support recusal under the circumstances. "Because a judge is presumed to be impartial, it has long been held that recusal under Article 151 B(5) is justified only when 'the bias, prejudice or personal interest [is] of a **substantial nature** and based on more than conclusory allegations.'" *Guidry*, 755 So.2d at 1038 (citing *Pierce v. Charity Hosp.*, 550 So.2d 211 (La.App. 4 Cir.), *writ denied*, 551 So.2d 1341 (La.1989) and authorities cited therein). K.P.W. has only alleged the conclusory allegation that the judge represented M.P. previously. Without more, we find that the judge did not commit error by continuing to preside over this matter.

*Incarcerated Father's Notice and Consent*

K.P.W. alleges that the adoption should be annulled for two additional reasons: (1) the natural father was not provided with adequate notice of the proceedings; and (2) the natural father did not consent to the adoption.

We first note that L.P.'s adoption was titled as, and constituted, an intrafamily adoption, which is governed by La.Ch.Code arts. 1243 - 1258. Article 1243 defines the persons who may petition for an intrafamily adoption. Included in this list are grandparents[5]:

> **Art. 1243. Persons who may petition for intrafamily adoption**
>
> A. A stepparent, stepgrandparent, great-grandparent, *grandparent*, aunt, great aunt, uncle, great uncle, sibling, or first cousin may petition to adopt a child if all of the following elements are met:

---

[5]In this case of intrafamily adoption, the maternal grandparents had provisional custody of L.P.

(1) The petitioner is related to the child by blood, adoption, or affinity through a parent recognized as having parental rights.

(2) The petitioner is a single person over the age of eighteen or a married person whose spouse is a joint petitioner.

(3) The petitioner has had legal or physical custody of the child for at least six months prior to filing the petition for adoption.

B. When the spouse of the stepparent or one joint petitioner dies after the petition has been filed, the adoption proceedings may continue as though the survivor was a single original petitioner.

*C. For purposes of this Chapter "parent recognized as having parental rights" includes not only an individual enumerated in Article 1193, but also*:

(1) A father who has formally acknowledged the child with the written concurrence of the child's mother.

*(2) A father whose name or signature appears on the child's birth certificate as the child's father.*

(3) A father, if a court of competent jurisdiction has rendered a judgment establishing his paternity of the child.

(Emphasis added).

"The consent of both parents is required before an adoption will be decreed except in those instances where parental consent has been specifically dispensed with, as in the case of abandonment . . . or failure to support." *Rodden v. Davis*, 293 So.2d 578, 580 (La.App. 3 Cir.), *writ denied*, 296 So.2d 832 (La.1974). It is uncontradicted that K.P.W. signed an authentic act of consent to her daughter's adoption by the grandparents.[6] The record contains no evidence regarding the

---

[6]Louisiana Children's Code Article 1244 provides:

**Art. 1244. Consent of parent**

A. Except as otherwise provided herein, any parent may execute an authentic act consenting to the adoption of his child in an intrafamily adoption, including a waiver of service for any subsequent

father's consent, or opposition, to the adoption. The only information in the record regarding the alleged unwed father's input into the adoption of L.P. is the attestation set forth in the grandparents' Petition for Intra-Family Adoption, which states that "[t]he natural father was notified by certified, return receipt, mail. As of this date, no response has been made." The father's address was stated as a P. O. Box at the Hunt Correctional Facility, where he was incarcerated at the time.

Although K.P.W. argues now that the father failed to consent or, for that matter, oppose the adoption because he did not receive notice of the 1998 proceedings, we find that she failed to present any evidence whatsoever to establish her contentions. No proof was submitted to contradict the assertions that notice was properly served upon the father in prison and that the father failed to respond.

A Final Decree and Judgment granting L.P.'s adoption was granted in 1998 based on the petition and supporting documentation submitted by the grandparents. "A judgment rendered by a court of competent jurisdiction imparts absolute verity and has the force of things adjudged, unless and until it is set aside in a direct action of nullity. It cannot be collaterally attacked." *Lowman v. Merrick*, 06-921, p. 10 (La.App. 1 Cir. 3/23/07), 960 So.2d 84, 90 (quoting *Salles v. Salles*, 04-1449, pp. 5-6 (La.App. 1 Cir. 12/20/05), 928 So.2d 1). We cannot annul a final judgment absent proof of ill practices or fraud:

> According to article 2004 of the Code of Civil Procedure, any final judgment obtained by fraud or ill practices may be annulled. Our jurisprudence sets forth two criteria to determine whether a judgment has been

proceeding.

B. If the parent of a child born of marriage is married to the stepparent petitioner and executes an authentic act of consent, he need not join in the petition nor be served with a copy thereof.

C. The parent of a child born outside of marriage who is married to the petitioning spouse shall join in the petition.

10

obtained by actionable fraud or ill practices: (1) when the circumstances under which the judgment was rendered show the deprivation of legal rights of the litigant who seeks relief, and (2) when the enforcement of the judgment would be unconscionable and inequitable. *Smith v. Cajun Insulation, Inc.,* 392 So.2d 398 (La.1980). *Johnson v. Jones-Journet*, 320 So.2d 533 (La.1975).

*Kem Search, Inc. v. Sheffield*, 434 So.2d 1067, 1070 (La.1983). In this case, no evidence of any ill practice or fraud was established by the plaintiff. Accordingly, we find no error in the trial court's judgment, dismissing K.P.W.'s Petition for Custody, Annulment of Adoption.

IV.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff-appellant, K.P.W.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.